# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

MARCH TERM, 1881.

---

GEORGE W. SMITH, appellant,

*v.*

THE MAYOR AND COMMON COUNCIL OF NEWARK, respondent.

1. The supplement to the charter of the city of Newark, framed April 15th, 1868 (*P. L. of 1868 p. 1002*), construed, and held to be constitutional.

2. The burden of showing error is on the appellant, and in a case of doubtful statutory construction, the court will not reverse.

---

On appeal from a decree of the chancellor, reported in *Smith v. Newark, 1 Stew. Eq. 5.*

*Mr. F. W. Stevens,* for the appellant.

The bill is filed to remove the cloud from the title to the lands of the complainant, arising from the assessment for grading, curbing, guttering, paving and flagging North Broad street, now Belleville avenue.

35 (545)

The question to be considered is a narrow one, and, stated in very general terms, is this :

Do the facts stated on the record bring the case within the ruling of this court in *Bogert* v. *City of Elizabeth, 12 C. E. Gr. 568*, where the bill to set aside an *unconstitutional* assessment was sustained ? or do they bring it within the ruling of this court in *Jersey City* v. *Lembeck, 4 Stew. Eq. 255*, where the bill to set aside an assessment which was *illegal*, but not unconstitutional, was dismissed ?

I. The provisions of the statutes under which the assessment was made are unconstitutional. *Doyle* v. *Newark, 1 Vr. 303; P. L. of 1868 p. 1002 ; State, Doyle, pros.* v. *Newark, 5 Vr. 237 ; 3 C. E. Gr. 527 ; 8 Vr. 424; 12 C. E. Gr. 569 ; Graham* v. *Paterson, 8 Vr. 381; Passaic* v. *State, Del. Lack. & West. R. R. pros. 8 Vr. 539.*

II. A sale of the property under an assessment which was clearly illegal, having been made, and the city of Newark having become the purchaser for a term of fifty years, and having taken a certificate of sale therefor, such certificate of sale, with an assertion of title on the part of the city, constitutes a cloud removable by a court of equity. *Jersey City* v. *Lembeck, 4 Stew. Eq. 255.*

While the court of chancery has never exercised a supervisory power over the acts of municipal bodies, it has always assumed jurisdiction over deeds purporting to convey lands, the existence of which, in an uncanceled state, has a tendency to throw a cloud over the title. *Story's Eq. Jur. § 700.*

It is true the legislature has extended the beneficial remedy of *certiorari* to the case of a deed (*Rev. 1045 § 15*), but this seems to have been done mainly in aid of the action of ejectment (*State, Graham pros.* v. *Paterson, 8 Vr. 384*), and the power of chancery to afford its remedy is not in any wise interfered with. The sale of lands for taxes or assessments is the execution of a naked power (*State, Baxter, pros.* v. *Jersey City, 7 Vr. 191*), and if a deed has been given in execution of this power, and a title set up thereunder, which is really no title, why should not chancery have the same power in this case that it admittedly has in all other cases ?

Smith *v.* Mayor and Common Council of Newark.

*Mr. Henry Young,* for respondent.

This court, sitting as a court of equity, is asked to assume the prerogative of the supreme court, which has always hitherto effectively controlled the action of inferior tribunals exercising particular legal functions.

No doubt can exist that the complainant's *remedy at law* is entirely efficacious, unless he has forfeited it by his laches.

His failure to avail himself promptly of his legal remedy, gives him no right to relief here. *Lewis* v. *Elizabeth, 10 C. E. Gr. 298.*

His remedy at law would be even more beneficial than that which he now seeks. *Lembeck* v. *Jersey City, 4 Stew. Eq. 255.*

The remedy at law, then, being adequate, the complainant can claim no relief in this court.

A court of equity will not undertake to set aside titles founded on tax or assessment sales, simply because the assessments have been illegally made. *Morris Canal and Banking Co.* v. *Newark, 1 Beas. 252 ; Holmes* v. *Jersey City, 1 Beas. 310; Liebstein* v. *Newark, 9 C. E. Gr. 206 ; Dusenbury* v. *Newark, 10 C. E. Gr. 287 ; Bogert* v. *Elizabeth, 10 C. E. Gr. 427 ; Lewis* v. *Elizabeth, 10 C. E. Gr. 289 ; Lembeck* v. *Jersey City, 4 Stew. Eq. 255.*

But the complainant invokes the aid of the statute of March 2d, 1870 (*P. L. p. 20*), entitled "An act to compel the determination of claims to real estate, and to quiet title to the same."

Several objections exist to the application of this statute to this suit.

1. The statute requires (sec. 2) that notice shall be given to the defendant with his subpœna, describing the land with precision, stating the object of the suit, and that if defendant claims any title or interest or encumbrance on said lands, he shall answer said bill, but not otherwise.

No such notice was given in this case.

2. The statute authorizes the bringing of suit in equity to settle title to lands only when the person whose title is disputed is (*a*) in *peaceable possession of said lands,* and (*b*) *when no suit is pending to test the validity of said title.*

These facts are jurisdictional, and *both* must exist to enable

the court to entertain jurisdiction. The complainant seeking the aid of the statute must bring himself within its provisions.

The bill states neither of these facts.

But (3) a more serious objection exists to the maintenance of complainant's suit. This act of 1870, if at all applicable to such a state of affairs as that in this suit, proposes nothing less than that the constitutional powers and jurisdiction of the supreme court of the state should be curtailed by legislative enactment, and transferred to a court of equity. The inability of the legislature to give such force and effect to this law has been recently determined in this court. *Lembeck* v. *Jersey City*, *4 Stew. Eq. 255*.

No provision exists in any law of this state for re-assessment when assessments are vacated in a court of equity.

Courts properly refuse to grant relief where no provision is made for re-assessment. *State, Wilkinson pros.* v. *Trenton, 7 Vr. 499*.

I submit (1) that the act of 1868 is constitutional. *Cooley on Const. Lim. 181-184*.

Such an enactment was held valid by this court in *Village of Passaic* v. *State, 8 Vr. 538*.

But (2) it is contended that the complainant should prevail, because the report fails to show affirmatively that the assessment was limited to the actual benefit.

The act relative to *certiorari* (*P. L. of 1871 p. 534*) provides that the courts of law shall have full power to determine *disputed questions of fact* as well as law, with reference to taxes and assessments. *Morris and Essex R. R. Co.* v. *Jersey City, 7 Vr. 56 ; Baxter* v. *Jersey City, 7 Vr. 188 ; Graham* v. *Paterson, 8 Vr. 384*.

A suggestion is made in the bill that the complainant should be relieved because this assessment was made after he purchased the property, and without knowledge that it was to be made.

But the principle of law is well established that if the original assessment for a local improvement be insufficient, the legislature may constitutionally authorize a re-assessment, and make it operate upon all the property benefited, *that is, upon all that was originally liable to contribute,* and such a law is valid as against a party purchasing intermediate the assessment and re-assessment.

*Dillon on Mun. Corp.* § *652,* and note ; *Cooley on Taxation 233 ;*
*Doyle* v. *Newark, 5 Vr. 237.*

The opinion of the court was delivered by

Beasley, C. J.

The object of the bill in this case is to remove a cloud from
the title of the complainant, who is the appellant here, to certain
lands situated in the city of Newark.    The proceeding is founded
on the statute entitled "An act to compel the determination of
claims to real estate in certain cases, and to quiet the title to the
same." (*Rev. 1189*).    The lands in question had been sold by
force of an assessment levied upon them for a portion of the
costs, damages and expenses consequent on regulating, grading,
paving, curbing and flagging of the street on which they fronted.
The city had become the purchaser at this sale.

The ground laid for relief against this course of law is that
the law that was enforced by that sale was imposed by virtue of
certain legislation that is unconstitutional.    If that contention is
not well founded, the bill has no legal or equitable foundation.

The inquiry thus raised touches the proper construction of the
supplement to the charter of the city of Newark, approved April
15th, 1868. (*P. L of 1868 p. 1002*).    This law is remedial of the
act to which it is auxiliary, in respect to the mode of assessing
the costs and charges arising in the grading, paving, &c., of
streets in this city.    That subject was regulated by section one
hundred and nine of the charter ; and as such regulation con-
sisted of a direction that such costs and charges should be dis-
tributed, under " a just and equitable assessment upon the owners
of lands and real estate on the line of said street," by the city
surveyor, the unconstitutionality of it was manifest, as it provided
no standard for the measuring of its imposition, other than the
discretion of the officer, nor did it attempt to restrict the land-
owner's quota to the special benefit imparted to his land by the
improvement.    This being the obvious and admitted imperfection
of the system originally established, it is further insisted that the
supplementary act just referred to does not so remodel the scheme
as to make it comport with the constitutional requirement.    It

thus becomes necessary to collate this supplement with the charter.

The supplement recites that the city had undertaken and performed, at considerable cost, certain works and improvements in several specified streets, some of which had been opened and others graded, and that assessments therefor had been made, but, on account of certain informalities and defects in the proceedings, the city was embarrassed in collecting the costs and expenses, and therefore it was enacted as follows :

"That it shall be lawful for the said common council, in the case of each of the aforesaid works or improvements, respectively, to appoint five disinterested freeholders of said city, to make assessment of the whole costs, damages and expenses of the works or improvement in respect to which they may be appointed, upon the owners of the land and real estate benefited, or intended to be benefited, according to the principles prescribed for similar cases in the act to which this is a supplement; * * * and it shall also be lawful for the said commissioners, in case they deem it proper and equitable, that any portion of the whole costs, damages and expenses of either of said works or improvements should be borne by the city at large, to so estimate and declare in their report, and thereupon they shall assess the balance of the whole amount of such costs, damages and expenses upon the owners of the lands and real estate benefited, or intended to be benefited, as hereinbefore is directed."

Upon reading this section, it becomes at once apparent that what it does, in express terms, is this: to declare that certain commissioners may be appointed to assess these costs and expenses on the lands benefited ; but the mode of doing that is not defined, and for such mode, it refers to the charter, for it says that such assessment shall be made " according to the principles prescribed *for similar cases* in the act to which this is a supplement." The meaning of this reference is the point of the present inquiry. What class of cases are the " similar cases " here indicated ? The reference must point to one of the two classes of proceedings provided in the charter, the one being that which pertains to the opening of streets, and the other that which pertains to the regulating and grading of streets. The former of these methods of assessment is defined in section one hundred and five of the charter of 1857 (*P. L. of 1857 p. 166*), and which is admitted to be constitutional; the latter, by section one hundred and nine, and which prescribes a mode of action which, as has been already said, is uncon-

stitutional. The decision, therefore, turns on the question whether the proceeding authorized by this supplement of 1868 is to be patterned after the method prescribed in section one hundred and five, or after that directed in section one hundred and nine. We have seen the relative words are those contained in the direction to make the assessment "according to the principles prescribed for similar cases in the act to which this is a supplement." On the side of the appellant, it is contended that these expressions denote similarity in the work or improvement; that is to say, when the commissioners by force of this supplement, have in hand a re-assessment which relates to the grading of a street, the case similar to that in the charter, is the work of grading provided for in section one hundred and nine, and so *vice versa.* The term " similar cases " imports similar improvements. It is manifest that there is considerable force in this view, but it is also manifest that there are other considerations having an adverse aspect. The proceeding set on foot by the supplement is a proceeding to be conducted by commissioners, and if we look for a " similar case " of that kind we will not find it in section one hundred and nine, for by force of that provision the city surveyor is to apportion the expenses, and not commissioners. We must resort to section one hundred and six, if we would find a similitude in this particular.

And so we come to the same result if we regard the class of persons who are to be assessed, for, by the supplement, and by section one hundred and six, the expenses are to be apportioned on the entire class who are benefited, while, according to section one hundred and nine, they are to be imposed only on lands bordering on the streets. In addition to this, there is a slight indication, having the same tendency, in section two of this supplement, from the fact that it directs the enforcement of the assessments authorized by it to be conducted after the manner of enforcing the assessments imposed under section one hundred and six. But it is not necessary to pursue this discussion further, for I think enough has been said to show that the expression in question is plainly ambiguous, and that it cannot be freed from uncertainty by any train of reasoning. The truth is, that these laws which this court is now called upon to construe,

like very much of the legislation that relates to our municipal governments, are so crudely put together, and are made up of such vague phrases, that it is impossible to avoid the unsatisfactory feeling that any judicial interpretation of them cannot be attended with any higher decree of certitude than that which an intelligent conjecture carries with it. In the court below this clause was interpreted in a sense which will · uphold these proceedings, and it is the duty of this court to lean strongly towards that same result. The burthen of showing error in the decree under review is on the appellant; to raise a doubt in that respect is not enough; and taking the argument of the counsel of the appellant at its best, it does not seem to me to do more than that. The consequence is, the decree should be affirmed.

*Decree unanimously affirmed.*