42 N.J. Super. 472 (1956)
127 A.2d 181
EDWARD J. HEAGEN AND ANNE M. HEAGEN, HIS WIFE; LOUIS MACCO AND PAULINE MACCO, HIS WIFE; ROBERT E. RICH; JOHANNA PASK AND DURANT W. PASK, HER HUSBAND; ELIZABETH B. MORTON; MARIE T. DAVALA AND BERNARD J. DAVALA, HER HUSBAND; ADA SHILCOX; EUGENE DEMBINSKI AND GLORIA DEMBINSKI, HIS WIFE, PLAINTIFFS-CROSS APPELLANTS,
v.
BOROUGH OF ALLENDALE, A MUNICIPAL CORPORATION OF THE COUNTY OF BERGEN AND STATE OF NEW JERSEY; JOHN L. RUCKER, LEWIS KORT, FRANK P. McCORD, RICHARD VAN HOUTEN, HELEN HANSON, JOHN W. WATTLES AND PERRY P. CONKLIN, CONSTITUTING THE MAYOR AND COUNCIL OF SAID BOROUGH, AND DAVID M. COLBURN, JR., BUILDING INSPECTOR, DEFENDANTS-RESPONDENTS, AND MARY JOB, PASKO C. JOB AND ANN MARY JOB, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1956.
Decided November 21, 1956.
*476 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Roy J. Grimley argued the cause for plaintiffs-cross appellants.
Mr. Ralph W. Chandless argued the cause for defendants-appellants Mary Job, Pasko C. Job and Ann Mary Job.
There was no appearance on behalf of the Borough of Allendale or of the borough officials, nor was any statement filed pursuant to R.R. 1:7-4.
The opinion of the court was delivered by CLAPP, S.J.A.D.
The plaintiffs in this action are residents and property owners of the Borough of Allendale. The defendants are the borough, its mayor, councilmen and building inspector, and also Mary Job, Pasko C. Job and Ann Mary Job. On February 14, 1929 Allendale adopted its original zoning ordinance. The defendants Pasko and Ann Job own a 2 1/2-story building, residential in appearance, which, notwithstanding some changes made from time to time in the ordinance, has always been located in a residential *477 zone. However, the first floor of the building has been operated from prior to February 14, 1929 to date, as a restaurant and bar. We are not concerned with this floor, except incidentally. Concededly it is a nonconforming use protected by N.J.S.A. 40:55-48. Our concern is with the use that has been made of the second floor for dining and dancing, with music. To state the matter specifically, the appeal and cross-appeal raise these questions: are these nonconforming uses protected by the statute; and if not, are plaintiffs barred from objecting to them because of laches or R.R. 4:88-15(a)?
The complaint is in two counts. In the first count plaintiffs sought to have the court invalidate an ordinance, adopted May 13, 1954, which amended the Allendale zoning ordinance solely for the purpose (as the trial court found) of creating in the residential district a small isolated business district comprised of the premises above mentioned and an adjoining property owned by the defendant Mary Job. In the second count plaintiffs demand the following relief: an injunction enjoining Pasko and Ann Job from enlarging the nonconforming use; prerogative writ relief compelling the borough officials to enforce the zoning ordinance against Pasko and Ann Job; and like relief invalidating building permits and certificates of occupancy, insofar as they authorize such an enlargement.
The trial court entered judgment sustaining the first count and declaring the amendatory ordinance void; no appeal is taken as to that matter. However an appeal is taken by the Jobs from the following part of the judgment:
"It is further ordered, * * * that the use of the said second floor for dancing and for music for dancing is not a part of the nonconforming use and is prohibited by the Allendale zoning ordinance."
And a cross-appeal is taken by the plaintiffs from the provision of the judgment adjudicating
"that the use of the second floor * * * for dining and for a meeting room is a part of the nonconforming use."
*478 A word might be said as to the burden of proof which rests on the respective parties in an action such as this. Plaintiffs make out a prima facie case with respect to the second floor by establishing that the present zoning ordinance prohibits the use of that floor for dining and dancing. It then falls upon the defendants, the owners and the public officials, to establish that the use, though nonconforming, nevertheless existed at the time of the passage of the ordinance; and where (as here) ordinances and amendments thereto have been adopted, which place a property from time to time in various zones in all of which, however, the use has been prohibited continuously over a period, then defendants must establish that this use existed when the first of these ordinances was adopted. This places a heavy burden on defendants in situations such as that before us, where (of course, it is happening more and more often) the applicable zoning ordinance was adopted over 20 years ago. However, a rule such as this, under which he who claims a nonconforming use is compelled to establish his claim, comports with the policy of the law in this State not to favor such a use. Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189, 196 (1955).
Under the rule stated, the defendants had the burden of establishing that the second floor was used for dining and dancing, with music, on February 14, 1929. The record is embarrassingly sketchy on the point. One witness, ten years old in 1929, furnishes the only proof as to the locus at the time:
"The rooms [on the second floor] that I had entered had tables and chairs * * * and there were a couple of bedrooms, to my recollection."
Are we to infer from the allusion to "tables and chairs" that the "rooms" were set up and used as public dining rooms? By the reference to "rooms" (excluding a "couple of bedrooms"), did the witness include a room 20' x 30' which in later years was used by small groups for dining *479 purposes? The briefs do not deal with these questions sharply. However, plaintiffs concede that the room 20' x 30' may have been used for public dining and meeting purposes in 1929; and the formalized conclusions in plaintiffs' briefs seem to make the same concessions. In any event, with regard to this area of 20' x 30', we conclude that plaintiffs have not carried the burden which is theirs, as cross-appellants, to establish error in the judgment below; "to raise a doubt in that respect is not enough." Smith v. Mayor and Common Council of Newark, 33 N.J. Eq. 545, 552 (E. & A. 1881). We will sustain the judgment insofar as it holds that the use of this area for dining and meeting purposes is protected by the statute. But the proofs do not warrant a finding that any additional part of the second floor was used for those purposes in 1929.
Nor is there any evidence whatever of music and dancing on the second floor in 1929. Mr. Job admitted that though there was dancing "occasionally" in the room 20' x 30' during (in any event) the early 1950s, there was none there during a prior period when his father operated the restaurant. (Nothing has been said by counsel as to an abandonment of any use.)
In fact there is no satisfactory proof of dancing on the first floor in 1929 (though it appears in the record that there was dancing on the first floor from 1933 on). Defendants put in evidence an opinion of the Bergen County Court of Common Pleas handed down in 1933 which reversed convictions of Mr. Job's father and mother and a corporation, of violating the Allendale zoning ordinance in connection with the operation of these premises. In a dictum, the court indicated clearly that there was a restaurant business in existence there in 1929, but the opinion, though possibly suggestive, is quite inexplicit as to the matter of dancing at that time. Accordingly, even if we assume that such an opinion and the order thereon are evidentiary (cf. Mead v. Wiley Methodist Episcopal Church, 23 N.J. Super. 342, 351 (App. Div. 1952); but cf. Local 167 of International Brotherhood of Teamsters, etc. v. United *480 States, 291 U.S. 293, 298, 54 S.Ct. 396, 78 L.Ed. 804, 809 (1933)), we do not think there is enough set forth therein on which to rest a finding by this court to that effect. In fact, defendants Job do not ask us to do so. We therefore do not reach the possible question (which indeed is not raised by counsel) whether dancing on the second floor is merely an unsubstantial extension of a protected right to use the first floor for that purpose.
We come then to the first question raised by the Jobs on the appeal: do the complaint and pretrial order raise the issue whether there was dancing and music for dancing on the second floor? In the complaint it is alleged that there had been an extension of a nonconforming use causing "disturbance, annoyance and discomfort." In any event, a number of witnesses were examined and cross-examined on the matter of dancing and music; and we are satisfied that the parties squarely recognized it as an issue below and in fact tried it, and that hence the Jobs are now precluded from complaining that it was not stated explicitly in the complaint and pretrial order. R.R. 4:15-2; Schnitzer & Wildstein, N.J. Rules Serv. A IV-386.
Defendants next claim that the right to operate a bar and restaurant on the first floor and a restaurant on the second floor (or at least in a portion of it) embraces, as an incident, music and dancing. N.J.S.A. 40:55-48 does not protect a nonconforming use unless it is substantially the same kind of use as that to which the premises were devoted at the time of the passage of the zoning ordinance. Kensington Realty Holding Corp. v. Jersey City, 118 N.J.L. 114, 115 (Sup. Ct. 1937), affirmed 119 N.J.L. 338 (E. & A. 1938). In particular, the question here is whether there is a substantial change in the kind of use if a room, which had been used for dining, were to be used for dining with music and dancing. We find no case on the point. For the benefit of the bar we have catalogued, below, certain appellate cases wherein it was held that a change or proposed change in use was not protected by N.J.S.A. 40:55-48. We are distinguishing an enlargement of a use, *481 which usually involves the erection of a building, an addition to a building, an extension of the area devoted to the use, or in one case, a substantial increase in the horsepower of the machinery devoted to the use (National Lumber Products Co. v. Ponzio, 133 N.J.L. 95, 98 (Sup Ct. 1945)  a 15-horsepower planer proposed to be substituted for a 5-horsepower saw). We do not pass on any question that may arise where there is an intensification of a use, as, where there has been a mere increase in the business or in the frequency of the use. The courts have disapproved changes from one use to another use, as follows:
Kensington Realty Holding Corp. v. Jersey City, supra  from a tea room or doctor's office to a funeral home (or a butcher shop, grocery store, or service station)
Simone v. Peters, 135 N.J.L. 495 (Sup. Ct. 1947)  from a cleaning and pressing establishment to a post office, library, etc.
Sitgreaves v. Board of Adjustment of Town of Nutley, 136 N.J.L. 21, 27 (Sup. Ct. 1947)  from a private garage to an auto repair shop
Lynch v. Hillsdale Borough, 136 N.J.L. 129, 133 (Sup. Ct. 1947), affirmed 137 N.J.L. 280 (E. & A. 1948)  from a building for the raising of chickens to one for the manufacture and packing of candy
Rupprecht v. Draney, 137 N.J.L. 564, 566, 567 (Sup. Ct. 1948), affirmed 1 N.J. 407 (1949)  from a public or storage garage to auto body repair and paint shop
Berdan v. City of Paterson, 1 N.J. 199, 203 (1948)  from a "light industrial" plant to a "heavy industrial" shop
Scerbo v. Board of Adjustment of City of Jersey City, 4 N.J. Super. 409, 413 (App. Div. 1949)  from a hand tailor shop to a drycleaning establishment with a machine and equipment valued at $5,300
Morris v. Borough of Haledon, 24 N.J. Super. 171, 177 (App. Div. 1952)  from a vocational school to a wood-working business, etc.
Barbarisi v. Board of Adjustment, etc., City of Paterson, 30 N.J. Super. 11, 17 (App. Div. 1954)  from an auto repair shop to a rug cleaning business
Gross v. Allan, 37 N.J. Super. 262, 271 (App. Div. 1955)  from a service station with a single used car displayed for sale, to a used car business with six cars displayed
We note also the following cases (though without passing on the situations presented) demonstrating the trend of the law in certain other jurisdictions, which, like New Jersey, *482 disfavor the nonconforming use and call for its restriction rather than its expansion. These changes were disapproved:
Fulford v. Board of Zoning Adjustment, 256 Ala. 336, 54 So.2d 580 (Sup. Ct. 1951), citing New Jersey cases  from a restaurant to a restaurant selling beer
City of Dallas v. Haworth, 218 S.W.2d 264 (Tex. Civ. App. 1949)  to like effect
Town Council of Town of Las Gatos v. State Board of Equalization, 296 P.2d 909 (Cal. D. Ct. App. 1956)  from a restaurant selling only beer to a restaurant with full liquor privileges
Salerni v. Scheuy, 140 Conn. 566, 102 A.2d 528 (Sup. Ct. Err. 1954)  to like effect
City of Lynn v. Deam, 324 Mass. 607, 87 N.E.2d 849 (Sup. Jud. Ct. 1949)  from a dance hall to a restaurant (however in the case sub judice, the dancing is in conjunction with dining)
The following cases hold there was no substantial change in the use:
North American Building & Loan Ass'n v. Board of Adjustment of City of New Brunswick, 117 N.J.L. 63 (Sup. Ct. 1936)  from the storage of sand and gravel in a building to the storage therein of cheese
Schaible v. Board of Adjustment, Twp. of Milburn, 15 N.J. Misc. 707 (Sup. Ct. 1937)  from the storage in a warehouse of building materials to the storage therein of lubricants
Lane v. Bigelow, 135 N.J.L. 195 (E. & A. 1947)  from an auto service station to a modern drive-in auto service station
Stout v. Mitschele, 135 N.J.L. 406 (Sup. Ct. 1947)  from a dairy farm to the raising of horses
Kramer v. Town of Montclair, 33 N.J. Super. 16, 18 (App. Div. 1954)  from the parking of 1 1/2-ton trucks to the parking of 6-ton trucks
In Martin v. Cestone, 33 N.J. Super. 267, 271 (App. Div. 1954), we stated that when there is doubt whether or not an extension of use is substantial, the extension should be disapproved. Likewise a change in use should be disapproved when there is doubt whether the change is substantial. These rules are derived from the general policy of the law (already adverted to) to restrict and disfavor a nonconforming use. Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189, 196 (1955). Applying such a rule here, and having in view the fact that the district is residential, we *483 conclude that the use of an area, 20' x 30', for dancing and music (along with dining) possibly twice a week, that may and apparently does at times last until 2 o'clock in the morning, is a different kind of use than if the area were used merely for meetings and for the serving of dinners. The noise of the music is a substantial factor in our decision. We conclude then, as did the Law Division, that the use of any part of the second floor for dancing and music is not a part of or incidental to any nonconforming use protected by the statute.
The next question goes to the extension in 1953 of the nonconforming use on the second floor. In early 1952 the second floor consisted of two bedrooms, a kitchen, a bathroom, an office and the above mentioned room of 20' x 30'. A fire occurred, and the partitions on the second floor were later removed so as to create a dining room, 30' x 44', and a serving kitchen. In March 1953 the enlarged dining room was first put in use. This enlargement made so as to include in the dining room what had been living quarters on the second floor constituted an extension of the nonconforming use. Cf. Martin v. Cestone, 33 N.J. Super. 267 (App. Div. 1954). In this State we have rejected the thesis that a nonconforming user has the right to expand his operations or facilities to the boundaries of the property existing at the time of the passage of the zoning ordinance; the policy of our law calls for the restriction of the use. Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189, 196, 197 (1955). We are not considering (and do not pass upon) a case where the whole of a building is now used for a purpose for which it was originally designed, even though it was only half used for that purpose at the time of the passage of the ordinance. This is a building, apparently built originally as a residence, in which a considerable part of the second floor had, prior to 1953, been used for residential purposes.
The next question arises with respect to an addition, 13.6' x 29.6', to the second-floor dining room, made in 1954 by constructing another story over a one-story wing of the *484 building. The dining room now is normally set up to accommodate 124 to 136 people. Obviously the new structure constituted an extension of the nonconforming use.
We come then to the defense of laches. In connection with that defense, we deal with respect to, first, the use of the second-floor dining room for dancing and music, second, the extension of the second-floor dining room in 1953 by removing partitions and, third, the extension thereof made in 1954 by adding a wing.
The fire referred to occurred in May 1952; work on the removal of the partitions started at the end of 1952, and (as stated) the enlarged dining room was put in use by March 1953. Prior to March 1953 the second floor was used only "occasionally" for dining and dancing. When there was a party there, Mr. Job's young children, who lived with his wife and himself on the second floor, were apparently moved out. Fifteen months elapsed between March 1953 and the commencement of the action. However, by 1954 there was dancing on the second floor, in conjunction with dinners, possibly twice a week.
It should be noted that there had been dancing on the first floor at least from 1933. But how much of a disturbance this may have created in the neighborhood was not brought out. One of the plaintiffs, who lived in the locality, testified that he did not recollect hearing any music at all from the first or second floor until after the fire.
Defendants have the burden of proving the defense of laches. Cf. R.R. 4:8-3. To make out the defense, they must establish a delay which has worked a prejudice on themselves and which, unless explained and excused, is altogether unreasonable under the circumstances. Hinners v. Banville, 114 N.J. Eq. 348, 357 (E. & A. 1933); Massie v. Asbestos Brake Co., 95 N.J. Eq. 298, 311 (E. & A. 1923). It is not established here that the plaintiffs knew or had reason to know of the dancing on the second floor prior to March 1953  it may have been so occasional as not to be very conspicuous. Nor  coming to the 15 months period from March 1953 to the time of the commencement *485 of this action  is it established that defendants (or for that fact, any other person or persons) have suffered a hardship or change of position because of plaintiffs' failure during those 15 months to bring this action with respect to the matter of dancing. And, as to be expected, there is no indication that the lapse of time since March 1953 has created any doubt with respect to the ascertainment of the facts  that is, there is no indication that witnesses have died, papers have been lost, or that so much time has elapsed that witnesses may have forgotton the circumstances. We conclude that plaintiffs are not to be charged with laches with respect to the dancing and music.
We turn next to the defense of laches in connection with the removal of the partitions in 1952 or 1953. There is no proof at all that plaintiffs ever knew of this interior work prior to the commencement of this action. In fact, the then building inspector testified that the application made for the building permit after the fire in May 1952 was not accompanied by a plan, or apparently any indication, as to what work was to be done on the second floor. Mr. Job contradicted this, testifying that a plan was filed. On the other hand, it may be observed that he knew that this was a nonconforming use; for he was acquainted with the litigation in the Bergen County Court of Common Pleas in which his father and mother were involved as a result of their operation of the premises in 1933. And he quite likely was aware that the convictions that had been obtained in that case were reversed in the Pleas because  though there had been a nonconforming use  there had been no extension of it.
Whether or not laches bars a cause of action, depends on the circumstances of the case. Donnelly v. Ritzendollar, 14 N.J. 96, 107, 108 (1953). Generally speaking, laches is not imputed to one who had no knowledge, or means of acquiring knowledge, of the facts giving rise to his cause of action. Donnelly v. Ritzendollar, supra; Matarrese v. Matarrese, 142 N.J. Eq. 226, 232 (E. & A. 1948). Cf. Stokes v. Jenkins, 107 N.J. Eq. 318, 324 (Ch. 1930). *486 Defendants have not proved to our satisfaction that the plan for the second floor was filed with the building inspector in 1952. Having that in mind, and having in mind too that it was all interior work (that is, not obvious to the neighbors), we conclude that defendants have not established laches with respect to the removal of the partitions.
Next we deal with the wing put on the dining room pursuant to a building permit issued February 13, 1954. The proofs do not indicate when the work was completed. Nor do they indicate with any distinctness when it was started, except as disclosed in two letters, both dated March 24, 1954, written by plaintiffs' counsel. One, written to Mr. Job, claims that counsel were informed that Mr. Job was "presently about to enlarge" the building and to increase the nonconforming use in violation of the zoning ordinance. The other, slightly inconsistent, was written to the then building inspector, stating that
"apparently an addition is being added * * * and that you are working on this addition." (Italics added.)
It is of some significance, we think, that, as the testimony shows, the then building inspector himself was seen doing some of the work on the job, presumably as a contractor or workman. What occurred between March 24 and April 8, 1954, we do not know; but on that date apparently there was introduced the amendatory ordinance above referred to, which the trial court held void.
The introduction of this ordinance indicates some recognition of the fact that the enlargement of the second-floor dining room was or might be an invalid extension of the nonconforming use, and that in order to validate the extension or to remove any question it was proposed to amend the zoning ordinance. Could not plaintiffs on April 8, 1954 proceed on the assumption that if the amendment were not adopted, the borough officials having raised some question as to the validity of the permit authorizing an addition to the building, they might then address themselves to the *487 enforcement of the zoning ordinance? Some members of the community protested the amendment; however, on May 13, 1954 the council by a vote of 3 to 2 adopted it.
The defendants have not carried the burden of proof on the issue of laches; they have not established what work had been done on the wing to the dining room, if any, before plaintiffs' protests of March 24, 1954, or between the time thereof and May 13, 1954, or between May 13 and June 10, 1954, 28 days later, when this action was started. Cf. Garrou v. Teaneck Tryon Co., 11 N.J. 294, 307 (1953), which involved the paving of land for a parking lot. The court there stated that where, before any significant construction is effected, there is an attorney's communication protesting a violation of the zoning ordinance 
"* * * subsequent construction was at the owner's peril. * * * Legal action at best involves expense and [plaintiff] is hardly to be criticized for withholding it until there was no alternative. If, as his showing indicates, there was a clear violation of the zoning ordinance, his proceeding to eliminate the unlawful use serves not only his private interests but those of the entire community as well and, under such circumstances, the equitable doctrine of laches should be hesitatingly invoked." (Italics added.)
The "no alternative" situation did not arise here until the adoption of the ordinance on May 13, 1954. In accordance with the view expressed in the last sentence quoted from Garrou, we conclude that where, as here, a plaintiff sues on behalf of the community with respect to a clear violation of the zoning ordinance, the doctrine of laches should not be applied against him to the same extent as it is applied against a person suing solely on his own behalf. Cf. Thornton v. Village of Ridgewood, 17 N.J. 499, 511 (1955). Laches, then, was not established with regard either to the addition to the dining room in 1954, or (as above stated) the removal of the partitions in 1953 or the dancing and music.
Plaintiffs therefore are entitled to an injunction against defendants Pasko C. Job and Mary Ann Job, enjoining them from using the second floor of the building for dining and meeting purposes, except within the area of *488 20' x 30' above stated, where the dining and meeting room was formerly located; and further enjoining the use of the entire second floor for dancing or music for dancing. There are practical difficulties and hardships involved in this direction which permits an area of only 20' x 30' out of this large room to be used for dining and meeting purposes, but the defendants Job have brought these problems on themselves. As we have indicated repeatedly in this decision, the policy of the law with respect to nonconforming uses is to subordinate the individual interests of the nonconforming user, to the interests which the community has in preserving its zoning plan. Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189, 196 (1955).
Plaintiffs have asked, both below and here, to compel the borough officials to enforce the zoning regulations against the defendant owners. However, so far as appears, the injunction above directed will provide plaintiffs with wholly adequate relief. For that reason the mandatory relief sought against the defendant officials will be denied. Garrou v. Teaneck Tryon Co., 11 N.J. 294, 304 (1953). We therefore need not consider R.R. 4:88-15(a) which was interposed as a bar to such relief.
Modified, with directions to enter a judgment below including the foregoing injunction.