TOWN OF BELLEVILLE, PLAINTIFF-APPELLANT, v.
PARRILLO'S, INC., DEFENDANT-RESPONDENT.

Argued May 5, 1980—Decided June 19, 1980.

---

*Frank J. Zinna,* Town Attorney, argued the cause for appellant.

No appearance was made on behalf of respondent.

The opinion of the Court was delivered by

CLIFFORD, J.

We granted certification, 82 *N.J.* 291 (1980), to review the Appellate Division's reversal of defendant's conviction for violating the zoning ordinance of the Town of Belleville. *Town of Belleville v. Parrillo's, Inc.,* 168 *N.J.Super.* 1 (1979). Specifically, defendant was found guilty of extending a nonconforming

use [1] when it changed its operation from a restaurant to a discotheque without having first obtained approval of the local board of adjustment. The Appellate Division concluded that "within the meaning and intent of our applicable statute, *N.J. S.A.* 40:55D–68, defendant did not either extend or enlarge its use of the premises." *Id.* at 7. Our examination of the record satisfies us that a prohibited change in use was established beyond a reasonable doubt, that being the appropriate standard of proof in these *quasi*-criminal proceedings. *City of Trenton v. Calvary Apostolic Temple, Inc.*, 166 *N.J.Super.* 145 (App.Div. 1979). We therefore reverse and reinstate the judgment of conviction.

I

The record demonstrates that sometime prior to 1955 Parrillo's operated as a restaurant and catering service on Harrison Street, Belleville. On January 1, 1955 the Town enacted a new zoning ordinance of which all provisions pertinent here are still in effect. The system created under that ordinance provided for zoning under which specific permitted uses for each zone were itemized. Uses not set forth for a particular zone were deemed prohibited. Parrillo's was situated in a "B" residence zone, which did not allow restaurants. However, because it had been in existence prior to the effective date of the zoning ordinance, defendant's establishment qualified as a preexisting nonconforming use and, under the terms of the ordinance, was allowed to remain in operation.

In 1978 defendant's owners made certain renovations in the premises. Upon their completion Parrillo's opened as a discotheque. We readily acknowledge that included among those for whom the term "discotheque" has not, at least until this case, found its way into their common parlance are some members of

---

[1] *N.J.S.A.* 40:55D–5 defines a nonconforming use as "a use or activity which was lawful prior to the adoption, revision or amendment of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located by reason of such adoption, revision or amendment."

this Court; and on the assumption that there may be others whose experience has denied them an intimate familiarity with the term and the milieu to which it applies, we pause to extend the benefit of definition. *Webster's Third New International Dictionary* 63a (1976) informs us that a discotheque is a "small intimate nightclub for dancing to recorded music; *broadly*: a nightclub often featuring psychedelic and mixed-media attractions (as slides, movies, and special lighting effects)".[2] "Disco" appears to be an accepted abbreviation. Defendant's operation is closer to the broad definition above than it is to a small or intimate cabaret.

Shortly after they had opened under the new format, Parrillo's owners applied for a discotheque license as required by the Town's ordinance regulating dancehalls. Although the application was denied, defendant continued business as usual. Thereupon the municipal construction code official filed the charges culminating in the conviction under review. The municipal court imposed a fine of $250.00.

On a trial *de novo* after defendant's appeal to the Superior Court, Law Division, the defendant was again found guilty. That court correctly framed the issue as whether "a change from a business primarily conducted as a restaurant with incidental dancing and serving of liquor [can] survive the proscription of the prohibiting ordinance when the character of the operation shifts to a form primarily conducted as a dance hall with the serving of liquor and incidental eating." That court determined that the evidence adduced could "lead to no other conclusion" than that there had been a prohibited extension of a nonconforming use, and likewise entered a judgment of conviction.

■ The Appellate Division reversed. The error in that result is rooted in the court's approach to the case, which was to review separately each component of the municipality's proofs

---

[2]In defense of the uninitiate it may appropriately be observed that "discotheque" is sufficiently new to the lexicon as not to be found in the main body of Webster's 1976 edition, it appearing only in the "addenda" section.

supporting the contention that defendant's operation was not permitted as a nonconforming use. 168 *N.J.Super.* at 4–6. From that perspective it reasoned that since each aspect of the "new" business had been conducted previously, there was no impermissible change from the nature of the "old" business. *Id.* at 6–7. The analysis was thus quantitative rather than, as it should have been, qualitative. Put differently, the focus in cases such as this must be on the quality, character and intensity of the use, viewed in their totality and with regard to their overall effect on the neighborhood and the zoning plan.

That was precisely the frame of reference of Judge Joseph Walsh in the trial *de novo* in Superior Court, Law Division. Contrary to the suggestion of the Appellate Division, *id.* at 3, Judge Walsh made extensive and specific findings of fact. They are amply supported by the record and are as follows:

The business was formerly advertised as a restaurant; it is now advertised as a "disco". It was formerly operated every day and now it is open but one day and three evenings. The primary use of the dance hall was incidental to dining; now it is the primary use. The music was formerly provided by live bands and now it is recorded and operated by a so-called "disc-jockey". An admission charge of $3.00 on the Wednesday opening and $5.00 on the Friday and Saturday openings is now mandatory as opposed to any prior entry charge. There is no charge for Sunday. Formerly there was but one bar; now there are several.

During the course of the testimony it was admitted that the business is operated as a "disco". Normal lighting in the premises was altered to psychedelic lighting, colored and/or revolving, together with mirrored lighting. The premises were crowded and there were long lines waiting to enter. There are now fewer tables than the prior use required and on one occasion there were no tables. The music was extremely loud and the premises can accommodate 431 persons legally. There have been numerous complaints from residents adjacent to the area. During the course of the testimony "disco" dancing was described by the owners as dancing by "kids" who "don't hold each other close". The bulk of the prior business was food catering; now there is none. The foods primarily served at the present time are "hamburgers" and "cheeseburgers", although there are other selections available to people who might come in earlier than the "disco" starting time.

On the basis of these findings Judge Walsh concluded that there had been a prohibited change in the use of the premises. He found to be dispositive the straightforward proposition that "a 'disco' is a place wherein you dance and a restaurant a place wherein you eat. It is as simple as that"—an unvarnished exercise in reductionism, perhaps, but one fully justified in this

case. He concluded that the defendant had "abandoned all the pretenses of the continued existence of a restaurant as it was before." We agree with that conclusion.

## II

Historically, a nonconforming use has been looked upon as "a use of land, buildings or premises that lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of such ordinance even though it does not comply with the use restrictions applicable to the area in which it is situated." 6 R. Powell, *The Law of Real Property* ¶ 871 (Perm.ed.1979). Under the Municipal Land Use Act, *N.J. S.A.* 40:55D–1 *et seq.*, such property is deemed to have acquired a vested right to continue in such form, irrespective of the restrictive zoning provisions:

> Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied and any such structure may be restored or repaired in the event of partial destruction thereof. [*N.J.S.A.* 40:55D–68.]

*See United Advertising Corp. v. Borough of Raritan,* 11 *N.J.* 144, 152–53 (1952).

This statutory guarantee against compulsory termination, however, is not without limit. Because nonconforming uses are inconsistent with the objectives of uniform zoning, the courts have required that consistent with the property rights of those affected and with substantial justice, they should be reduced to conformity as quickly as is compatible with justice. *Hay v. Board of Adjustment,* 37 *N.J.Super.* 461, 464 (App.Div.1955); see *Grundlehner v. Dangler,* 29 *N.J.* 256, 274 (1959) (Burling, J., concurring). In that regard the courts have permitted municipalities to impose limitations upon nonconforming uses. Such restrictions typically relate to the change of use, *Lynch v. Borough of Hillsdale,* 136 *N.J.L.* 129 (Sup.Ct.1947), aff'd., 137 *N.J.L.* 280 (E. & A.1948); the enlargement or extension of the repair or replacement of nonconforming structures, *Spiegle v. Borough of Beach Haven,* 116 *N.J.Super.* 148 (App.Div.1971); and limits on the duration of nonconforming uses through abandonment or discontinuance, *Borough of Saddle River v. Bobinski,* 108 *N.J.Super.* 6 (Ch.Div.1969).

■ The method generally used to limit nonconforming uses is to prevent any increase or change in the nonconformity. Under that restrictive view our courts have held that an existing nonconforming use will be permitted to continue only if it is a continuance of substantially the same kind of use as that to which the premises were devoted at the time of the passage of the zoning ordinance. *Ranney v. Istituto Pontificio Delle Maestre Filippini,* 20 *N.J.* 189, 196–98 (1955); *Heagen v. Borough of Allendale,* 42 *N.J.Super.* 472, 480 (App.Div.1956); *Kensington Realty Holding Corp. v. Jersey City,* 118 *N.J.L.* 114, 115 (Sup.Ct. 1937), *aff'd.,* 119 *N.J.L.* 338 (E. & A.1938). In that regard nonconforming uses may not be enlarged as of right except where the change is so negligible or insubstantial that it does not warrant judicial or administrative interference. *Grundlehner, supra,* 29 *N.J.* at 263. Where there is doubt as to whether an enlargement or change is substantial rather than insubstantial, the courts have consistently declared that it is to be resolved against the enlargement or change. *Id.* at 264; *Heagen, supra,* 42 *N.J.Super.* at 482; *Martin v. Cestone,* 33 *N.J.Super.* 267, 271 (App.Div.1954).

In the instant case it is acknowledged by all parties that the former restaurant had constituted a proper preexisting nonconforming use. The issue then becomes whether the conversion from a restaurant to a discotheque represented a substantial change, and was thus improper. Fundamental to that inquiry is an appraisal of the basic character of the use, before and after the change. *See* 6 P.I. Ronan, *Zoning & Land Use Controls,* § 41.03[2] (Matthew Bender 1978).

Courts that have engaged in that appraisal have proceeded with a caution approaching suspicion. *See, e. g., Berdan v. City of Paterson,* 137 *N.J.L.* 286 (Sup.Ct.1948) (change from "light industrial" plant to "heavy industrial" shop disapproved); *Berry v. Recorder's Ct.,* 124 *N.J.L.* 385 (Sup.Ct.), *aff'd.,* 125 *N.J.L.* 273 (E. & A.1940) (conversion of farm with incidental use of horses to stable and riding academy unlawful); *Hantman v. Randolph Twp.,* 58 *N.J.Super.* 127 (App.Div.1959), certif. den., 31 *N.J.* 550 (1960) (change of use from summer bungalows to year-round

occupancy dwellings unlawful extension of nonconforming use); *Heagen v. Borough of Allendale, supra* (addition of music and dancing to restaurant substantial change in use); *Gross v. Allan,* 37 *N.J.Super.* 262 (App.Div.1955) (change from service station with single used car displayed for sale to used car business with six car inventory unlawful); *Morris v. Borough of Haledon,* 24 *N.J.Super.* 171 (App.Div.1952) (change from vocational school to woodworking business disapproved); *Scerbo v. Board of Adjustment,* 4 *N.J.Super.* 409 (App.Div.1949) (conversion of hand tailor shop to dry cleaning business unlawful). *Contra, Moore v. Bridgewater Twp.,* 69 *N.J.Super.* 1 (App.Div.1961) (right to conduct nonconforming quarrying operation not limited to portion of tract used at time prohibitive zoning ordinance adopted); *Kramer v. Town of Montclair,* 33 *N.J.Super.* 16 (App.Div.1954) (change from parking 1½ ton trucks to parking 6 ton trucks not substantial); *Stout v. Mitschele,* 135 *N.J.L.* 406 (Sup.Ct.1947) (conversion of dairy farm to horse raising enterprise not unlawful).

*Hantman v. Randolph Twp., supra,* well illustrates the proper analysis for examining changes in nonconforming uses. In *Hantman,* the plaintiffs owned a commercial bungalow colony which was primarily dedicated to seasonal use. When the area in which the colony was situated was zoned for residential use, the plaintiff's property was afforded preexisting nonconforming use status by the Township. In 1957 the plaintiffs attempted to convert the bungalows into dwellings suitable for year-round occupancy. That effort was challenged by the Township on the ground that the change would constitute an unlawful extension of the nonconforming use. Agreeing with the Township, the Law Division entered an injunction against the proposed modifications. 58 *N.J.Super.* at 132–33.

On appeal, the Appellate Division affirmed. Reviewing the facts the court established that the plaintiffs' bungalows were in fact nonconforming uses. It then proceeded to address the question of whether permitting fulltime occupancy would effect a substantial change in the premises. Answering in the affirmative, the court declared, "an increase in the time period during

which a nonconforming use is operated may justifiably be the basis for finding an unlawful extension thereof, just as changes in the functional use of the land or increases in the area of use have been." *Id.* at 137. Recognizing that nonconforming uses are disfavored, the Appellate Division emphasized the deleterious effect that year-round operation of the bungalows might have upon the general welfare of the municipality. Of particular interest was the court's refusal to attach any significance to the fact that the bungalows had been occupied on a fulltime basis in the past. Adopting the findings of the trial judge, the court characterized the previous instances of fulltime occupancy as "sporadic" and "incidental to the primary business conducted." Noting that where there is doubt as to the substantiality of the extension, it should be disapproved, the court found the proposed conversion represented a substantial, and therefore unlawful, change in the nonconforming property. *Id.* at 138. We fully approve of and adopt the approach and analytical framework of the *Hantman* court.

### III

We have already expressed our agreement with the municipal court and with Judge Walsh, presiding at the trial *de novo*, that defendant's conversion of the premises from a restaurant to a discotheque resulted in a substantial, and therefore impermissible, change. The entire character of the business has been altered. What was once a restaurant is now a dancehall. Measured by the zoning ordinance the general welfare of the neighborhood has been demonstrably affected adversely by the conversion of defendant's business. Our strong public policy restricting nonconforming uses requires reversal of the judgment below.

We observe that a *quasi*-criminal proceeding is a poor vehicle for a determination of the underlying issue in cases such as this. *See Town of Kearny v. Modern Transportation Co.*, 116 *N.J.Super.* 526, 530 (App.Div.1971). Only a penalty may be imposed, and the more demanding burden of proving a zoning ordinance violation beyond a reasonable doubt may inhibit the attainment

of the ultimate goal sought by the municipal authorities, namely, preservation of the zoning plan and containment of nonconforming uses. Counsel for the Town in this case readily conceded at oral argument before us that the municipality would have done better to seek injunctive relief rather than to file a complaint in the municipal court.[3] *See, e. g., Borough of Saddle River v. Bobinski, supra.*

■ Finally, we point out that the Court views with disfavor the conduct of the attorney of record for defendant. He has disregarded all written communications from the Clerk of this Court as to counsel's intentions on this appeal. He did not file any responsive papers or brief on the petition for certification; he did not furnish a copy of his Appellate Division brief in lieu of an answering brief to the petitioner's brief; he did not respond to the Clerk's notification with respect to argument before the Supreme Court; and he has not otherwise explained his silence. There may be good and sufficient reasons for the stance he has taken, but in the absence of any explanation whatsoever counsel's ostensible incivility to an arm of this Court—and hence to this Court directly—is *prima facie* the sort of discourtesy contemplated by *DR* 7–106(C)(6). Public announcement of counsel's dereliction herein should serve as notice to the bar that such disrespectful conduct will not be countenanced in the future.

Reversed. The cause is remanded to the Superior Court, Law Division, for entry there of a judgment of conviction.

*For reversal*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For affirmance*—None.

---

[3] Counsel who argued the case on appeal did not represent the Town at the time the complaint was filed.