239 N.J. Super. 51 (1990)
570 A.2d 1012
DONNA CAMARA, PLAINTIFF-APPELLANT,
v.
BOARD OF ADJUSTMENT OF THE TOWNSHIP OF BELLEVILLE, AND BUILDING INSPECTOR OF THE TOWNSHIP OF BELLEVILLE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted December 18, 1989.
Decided February 23, 1990.
*52 Before Judges COLEMAN, MUIR and SKILLMAN.
Michael J. Viola, attorney for appellant.
Jon P. Campbell, attorney for respondents.
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
The broad issue posited in this appeal is how to terminate a nonconforming use or structure. The narrow issue is whether the termination of a business may precipitate the extinguishment of a nonconforming use or structure limited to the manner of suspension of a sign used to advertise the prior business.
In this action in lieu of prerogative writs, plaintiff seeks to overturn a decision of the Board of Adjustment of the Township of Belleville (Board of Adjustment) which denied a variance respecting the hanging of a sign advertising a professional office. Plaintiff also sought a determination that her refurbished sign was a continuation of a nonconforming structure and requested a permit to allow the sign to remain. The Board *53 of Adjustment concluded that the termination of the prior business ended the right to display a sign which projected more than six inches beyond the building facade or one of its side walls. The Board of Adjustment denied plaintiff's application for a variance and refused to issue a permit allowing her new sign to remain. The Law Division agreed and we now affirm.

I
For approximately 30 years prior to 1985, Greylock Liquors was a tenant at 564 Union Avenue, Belleville, New Jersey. A projecting illuminated sign was hung to advertise the business. Although the sign was modified in the early 1970's, the sign remained when the liquor store terminated its business apparently in 1984 or early 1985. The sign contained the words "Pepsi" on the top and "Greylock Liquors" on the bottom. The sign was a nonconforming legal structure in the neighborhood retail district in that it projected more than six inches from the building facade or one of its side walls. After the liquor store terminated its use and occupancy of the premises, plaintiff, a chiropractic physician, moved her professional offices into the premises previously occupied by the liquor store. Plaintiff had the liquor store sign removed, refurbished and changed to read "Greylock Chiropractic Clinic." The refurbished sign was rehung in the identical manner as was the liquor store sign without permission from any zoning or construction code official.
There is conflicting evidence as to whether the new sign is identical to the liquor store sign except for the change in the name of the business on the facade of the sign. Plaintiff testified that it is substantially the same. Objectors from the neighborhood testified that the new sign is different in that it contains a different "angle," the lettering was changed from silver aluminum to bronze aluminum, and that it is bigger, brighter and wider. Although the Board of Adjustment did not articulate findings resolving conflicts in the evidence, a remand *54 is unnecessary because our disposition is based on the manner the sign was rehung rather than the changes made to the sign.
On March 12, 1985, the Township's Construction Code officer, who apparently doubled as the zoning officer, advised plaintiff that her sign violated the local zoning "Ordinance # 2027, Article XVIII `Signs'" in that her sign projected more than six inches beyond the building facade. Plaintiff was ordered to remove the sign in ten business days. Before the ten days expired, however, plaintiff advised the Construction Code official on March 21, 1985 that her sign was the same one used by the liquor store except for the change "to reflect the change of business." Apparently relying on the information contained in plaintiff's letter, the Construction Code official issued a permit on March 26, 1985 allowing the sign to remain in place.
The permit, however, was rescinded on August 6, 1985 by the Construction Code official because the Planning Board disagreed with his interpretation of the sign ordinance. Plaintiff was again directed to remove the sign within 10 days. On March 18, 1987, the Construction Code official denied plaintiff's request for a permit "to erect a projected wall mounted sign above [her] existing professional office ..." based on the sign ordinance. Plaintiff was advised that any relief from the sign ordinance should be sought from the Board of Adjustment. According to the transcript of the hearing before the Board of Adjustment, plaintiff sought a variance to create a new nonconforming use or structure or to enlarge or extend a preexisting nonconformity "to erect a projected wall mounted sign above existing professional office at 564 Union Avenue." See N.J.S.A. 40:55D-70d; Burbridge v. Governing Body of Tp. of Mine Hill, 117 N.J. 376, 379, 568 A.2d 527 (1990). By a unanimous vote, the Board of Adjustment denied the application for a variance.
Under Point I of plaintiff's appellate brief, she describes her application for the variance as "a limited extension of a non-conforming use." In support of her position, plaintiff argues that the sign provides a benefit for the neighborhood by its illumination, *55 thereby increasing safety in the neighborhood. She also argues "[t]he property is unique and an exceptional situation certainly does exist since [a] sign [that is] the same or similar to the one plaintiff has currently at the property has been in use for some eleven (11) years, uninterrupted" and that she only changed the name on the facade of the sign. Further, plaintiff contends that the denial of a variance was arbitrary, capricious and unreasonable because the benefits from the illumination substantially outweigh any detriments to the zoning plan. Finally, under Point III, plaintiff appears to argue that a variance was not required because the sign was a lawful nonconforming use or structure which predated the present sign ordinance and as such the nonconforming use or structure was continued by virtue of N.J.S.A. 40:55D-68. We have combined these points for disposition because they are interrelated.

II
We agree that if the nonconforming use or structure  the extent to which the sign projected from the building  continued following the termination of the liquor store business, there would be no need for a variance. We must therefore first review the controlling law before deciding whether the nonconformity abated when the liquor store business was terminated.
Our analysis begins with the well stated proposition that nonconforming uses and structures are disfavored in that they are inconsistent with the objective of uniform zoning. "[T]hey should be reduced to conformity as quickly as is compatible with justice." Belleville v. Parrillo's, Inc., 83 N.J. 309, 315, 416 A.2d 388 (1980); Hantman v. Randolph Tp., 58 N.J. Super. 127, 137, 155 A.2d 554 (App.Div. 1959), certif. den. 31 N.J. 550, 158 A.2d 451 (1960); Heagen v. Allendale, 42 N.J. Super. 472, 478, 127 A.2d 181 (App.Div. 1956). Municipalities are permitted to enact zoning ordinances which impose limitations upon nonconforming uses and structures. Parrillo's, Inc., 83 N.J. at 315, 416 A.2d 388.
*56 N.J.S.A. 40:55D-68, which was previously N.J.S.A. 40:55-48, provides that "[a]ny nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied...." But the Legislature did not intend to continue every nonconforming use or structure forever. Indeed, the statute directs that a nonconforming structure may be restored or repaired only "in the event of partial destruction thereof." Ibid. This statutory language has led our courts to conclude that a totally destroyed nonconforming structure may not be restored. See Avalon Home & Land Owners v. Bor. of Avalon, 111 N.J. 205, 211-212, 543 A.2d 950 (1988); Hay v. Bd. of Adj. of Bor. of Ft. Lee, 37 N.J. Super. 461, 465, 117 A.2d 650 (App.Div. 1955). Total destruction has been judicially defined to mean "substantially totally destroyed." Lacey Tp. v. Mahr, 119 N.J. Super. 135, 138, 290 A.2d 450 (App.Div. 1972). See also Krul v. Bayonne Bd. of Adj., 122 N.J. Super. 18, 25-29, 298 A.2d 308 (Law Div. 1972), aff'd 126 N.J. Super. 150, 313 A.2d 220 (App.Div. 1973).
Although the present case does not involve destruction of the building to which the sign is attached, it does involve another form of termination of the nonconforming structure or use, namely the demise of the liquor store business to which the nonconformity related. Our Supreme Court has acknowledged that the duration of nonconforming uses or structures may be limited by abandonment or discontinuance. Belleville v. Parrillo's Inc., 83 N.J. at 315, 416 A.2d 388. Ordinarily, abandonment of a nonconforming use or structure requires "the concurrence of two factors: one, an intention to abandon; and two, some overt act, or some failure to act, which carries a sufficient implication `that the owner neither claims nor retains any interest in the subject matter of the abandonment.'" Saddle River v. Bobinski, 108 N.J. Super. 6, 16-17, 259 A.2d 727 (Ch.Div. 1969).
Further, in zoning law discontinuance is synonymous with abandonment. "It connotes a voluntary, affirmative, completed *57 act." State ex rel. Schaetz v. Manders, 206 Wis. 121, 124, 238 N.W. 835, 837 (Sup.Ct. 1931). See also Navin v. Early, 56 N.Y.S.2d 346, 347 (Sup.Ct. 1945). Webster's Third New International Dictionary, p. 646, defines discontinuance to include termination, breaking off, giving up and abandoning. But as the Connecticut Supreme Court recognized recently, a nonconforming use or structure may be terminated based on cessation of use independent of any intent to abandon the nonconforming use or structure. Essex Leasing, Inc. v. Essex Zoning Bd. of Appeals, 206 Conn. 595, 599-603, 539 A.2d 101, 104-105 (Sup. Ct. 1988).

III
We now apply the foregoing legal principles to the facts of this case. The pertinent sections of the Township of Belleville Ordinance No. 2027, codified as Belleville, N.J., Rev. Ord. § 23-18.1 et seq. (Supp. 1984), provide:
§ 23-18 SIGNS
§ 23-18.1 General Provisions

f. At the termination of a business, commercial or industrial enterprise, all signs pertaining thereto shall forthwith be removed from the public view. Responsibility for violation shall reside with the property owner, according to the latest official tax rolls listing.
* * * * * * * *
§ 23-18.3 Signs in the Business and Industrial Districts.

The following types of signs shall be permitted in Business or Industrial Districts: Commercial
a. Flat signs which shall not project more than six inches beyond the building facade and/or one side wall thereof;
Both the Board of Adjustment and the Law Division considered the sign ordinance and concluded that the nonconforming use or structure  the manner in which the Greylock Liquors sign was hung  terminated when the liquor business went out of existence. The judge below observed:
What we have here is an ordinance which says that when you got a business that has a sign and that sign is a non-conforming use, that sign is protected as *58 long as the business continues. When the business stops, then the non-conforming use also stops.
* * * * * * * *
... Now, the part of the business that this was, was the business of a liquor dealer of some kind and this business went and no longer existed. It went out. So the sign served no function and that's what the ordinance says.
Now, when somebody goes out of business, the sign has no function. Start anew. You start the conformity with the requirements of the local ordinances.
An ordinance which provides that signs used in connection with a business must be removed when that business is terminated is reasonable legislation regulating signs and terminating nonconforming signs based on the manner in which the signs are hung. After all, a "business sign is in actuality a part of the business itself, just as the structure housing the business is a part of it, and the authority to conduct the business in a district carries with it the right to maintain a business sign on the premises subject to reasonable regulations...." United Advertising Corp. v. Raritan, 11 N.J. 144, 150, 93 A.2d 362 (1952).
We read the Belleville Rev. Ord. § 23-18.1f and § 23-18.3a to evince a clear intent for cessation of the nonconforming manner in which the liquor store sign was hung upon termination of the liquor store business. The ordinance calls for extinguishment of the prior nonconformity based on the objective conduct of terminating the business to which the sign pertains. The ordinance is presumptively valid, Zilinsky v. Verona Zoning Bd. of Adj. of Verona, 105 N.J. 363, 368-369, 521 A.2d 841 (1987), and represents a reasonable legislative attempt to reduce nonconformity in a manner that is compatible with justice.
The criterion of determination is the use of the property to which the sign was an integral part at the time the new zoning ordinance was enacted. The new sign ordinance clearly has not attempted to preclude a continuance of the nonconformity during the lifetime of the business to which the sign related. To the contrary, the ordinance merely enables the municipality to seize upon the failure of the liquor store to continue in business. *59 The practical effect of § 23-18.1f is to render termination of the liquor store business as synonymous with abandonment of the nonconformity. In this context, the abandonment is based on the objective conduct of terminating the liquor store business to which the sign related. The propitious event of ending the liquor store business manifests an intent to relinquish, discontinue and abandon the nonconformity related to the liquor store sign. It bears repeating that the nonconformity associated with both the liquor store sign and plaintiff's new sign is based on the fact that each was suspended so as to project more than six inches beyond the building facade. Plaintiff is permitted to hang a refurbished sign in the manner prescribed in § 23-18.3a.
Once the nonconformity was extinguished on the day the liquor store business was terminated, plaintiff could not reestablish the prior nonconformity by hanging her newly refurbished sign in a manner so that it projected "more than six inches beyond the building facade and/or one side wall thereof." The cessation of the liquor store business to which the "business sign [was] in actuality a part of" was tantamount to termination of a nonconforming structure through total destruction. Where, as here, the prior nonconformity has been terminated properly, N.J.S.A. 40:55D-68 precludes rebuilding or reestablishing an extinguished nonconforming use or structure. Avalon Home & Land Owners v. Bor. of Avalon, 111 N.J. at 211, 543 A.2d 950.
We reject plaintiff's contention that she was entitled to a "limited extension of a non-conforming use." The law rearticulated in Parrillo's, Inc. respecting the methodology of limiting nonconforming uses and structures by precluding substantial increases or changes in the nonconformity, which the dissent has employed, is not controlling in light of our determination that the prior nonconformity has been abated. As noted above, when abatement occurs, the prior nonconformity no longer exists and thus there is no nonconformity to extend or increase. Suffice it to say that the dissent reads our opinion too broadly *60 when it asserts that if a nonconforming structure housed multiple businesses and one of them ceased to exist, we would require removal of a sign that related to unaffected businesses. Such a suggestion is unwarranted. Our holding today is very narrow and is fact sensitive. See Burbridge, supra, 117 N.J. at 379, 568 A.2d 527.
That brings us to the denial of the variance. Plaintiff sought a variance to create a new nonconforming use or structure in the form of a sign which projected more than six inches beyond the building facade or side wall. Plaintiff, however, labeled her request as a "limited extension for an existing non-conforming use." See Grundlehner v. Dangler, 29 N.J. 256, 269, 148 A.2d 806 (1959). It is well established that the local officials are best equipped to pass on variance applications because of their peculiar knowledge. Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268, 296, 212 A.2d 153 (1965). "Variances to allow new nonconforming uses should be granted only sparingly and with great caution since they tend to impair sound zoning." Kohl v. Mayor of Fair Lawn, 50 N.J. 268, 275, 234 A.2d 385 (1967); Burbridge, supra. Furthermore, the Board of Adjustment's denial of the variance is entitled to a presumption of validity. Kramer, 45 N.J. at 296, 212 A.2d 153.
Our careful study of the resolution of the Board of Adjustment in light of the record, persuades us to conclude that its decision was not arbitrary, capricious or unreasonable. A new nonconforming use or structure in this nonhardship case would not advance the cause of the new sign ordinance designed to reduce nonconformity "as quickly as is compatible with justice." The Board of Adjustment sought "to effectuate the goals of the community as expressed through its zoning ... ordinances." Kaufmann v. Warren Tp. Planning Bd., 110 N.J. 551, 564, 542 A.2d 457 (1988). The illumination of the area by the sign which was hung in a nonconforming manner did not outweigh the detriment to the neighborhood retail district. Moreover, hanging the sign in accordance with § 23-18.3a *61 would also provide illumination. To be sure, the Board of Adjustment utilized its peculiar knowledge of the local conditions in denying the variance and we must accord deference to its exercise of discretion. Burbridge, supra; Medici v. BPR Co., 107 N.J. 1, 23, 526 A.2d 109 (1987).
We have considered the remaining contentions raised and find they are clearly without merit. R. 2:11-3(e)(1)(D) and (E). We add, however, that the permit was issued by the Construction Code official after plaintiff's sign had been erected and that fact precludes any detrimental reliance. Hence, there is no basis to apply estoppel. O'Malley v. Dept. of Energy, 109 N.J. 309, 316, 537 A.2d 647 (1987); Mahwah Tp. v. Landscaping Techs., Inc., 230 N.J. Super. 106, 552 A.2d 1021 (App.Div. 1989); Freeman v. Hague, 106 N.J.L. 137, 140-141, 147 A. 553 (E. & A. 1929). See also Ianieri v. East Brunswick Zoning Bd. of Adj., 192 N.J. Super. 15, 24-25, 468 A.2d 1072 (Law Div. 1983). Finally, there was no evidence that Alois E. Schmitt, who was a member of both the Planning Board and the Board of Adjustment, was personally disqualified by virtue of N.J.S.A. 40:55D-69 from voting on plaintiff's application.
The judgment of the Law Division dismissing the complaint is affirmed.
SKILLMAN, J.A.D., dissenting.
I am unable to agree with the majority's conclusion that a municipality may compel the elimination of a nonconforming sign simply because there has been a change in the use of the property which necessitates a change in the lettering on the sign. Accordingly, I dissent.
At the outset, it is important to identify the limited respect in which plaintiff's premises fail to conform with Belleville's zoning ordinance. It is undisputed that professional offices are a permitted use in the zone where plaintiff's chiropractic office is *62 located.[1] Consequently, this is not a nonconforming use case. The nonconformity of plaintiff's premises is limited to a sign which conflicts with a recently adopted zoning ordinance providing that flat signs may not project more than 6 inches beyond the building facade. See 4 Rathkopf, The Law of Zoning and Planning, § 51.01[2] at 51-10 (4th ed. 1988) ("uses which do not conform to the provisions of the ordinance are ... viewed more seriously than noncompliance with nonuse restrictions, i.e., regulations affecting lot size and building bulk, height, and location.") Therefore, the question presented by this appeal is whether a property owner's right under N.J.S.A. 40:55D-68 to continue the use of a nonconforming structure, in this instance a sign, is lost simply because there has been a change in the business conducted on the premises and a consequent change in the lettering on the sign.
I recognize that Belleville's sign ordinance may be interpreted to require the removal of any preexisting sign upon a change in the business conducted on the premises. However, I am convinced that Belleville's ordinance, thus interpreted, would be contrary to N.J.S.A. 40:55D-68 and hence invalid.
It is clear that the right to continue the use of a nonconforming sign is within the protection which N.J.S.A. 40:55D-68 affords nonconforming uses and structures. See United Advertising Corp. v. Bor. of Raritan, 11 N.J. 144, 152-153, 93 A.2d 362 (1952); see also Ackerman Fuel Co. v. Paramus Bd. of Adjustment, 136 N.J.L. 93, 54 A.2d 661 (Sup.Ct. 1947). Moreover, any municipal ordinance regulating the continuation or termination of nonconforming uses or structures must be consistent with the Municipal Land Use Law. Avalon Home & Land Owners Ass'n v. Bor. of Avalon, 111 N.J. 205, 543 A.2d 950 (1988). Thus, "[i]t is beyond the power of a municipality to *63 limit by zoning ordinance the right expressly given the owner by... statute indefinitely to continue a nonconforming use." United Advertising Corp. v. Bor. of Raritan, supra, 11 N.J. at 152-153, 93 A.2d 362; see also State v. Accera, 36 N.J. Super. 420, 116 A.2d 203 (App.Div. 1955). Furthermore, a mere change in the ownership or tenancy of a property does not terminate the right to continue a nonconforming use or structure. Arkam Machine & Tool Co. v. Lyndhurst Tp., 73 N.J. Super. 528, 533, 180 A.2d 348 (App.Div. 1962).
Therefore, if plaintiff had continued to operate a liquor store on the premises, she unquestionably could have continued to use the nonconforming sign. Moreover, as I read the majority's opinion, it would recognize plaintiff's right to change the lettering on the sign to read "Camara Liquors" instead of "Greylock Liquors." Yet the majority concludes that plaintiff lost the right to continue the use of the nonconforming sign because she changed the lettering to read "Greylock Chiropractic Clinic," thus reflecting a change in the use of the property.
If liquor stores and chiropractic offices were both prohibited uses in the zone, I would have little hesitancy in concluding that plaintiff's use of the property for a chiropractic office would constitute a substantial change in its prior nonconforming use as a liquor store and therefore would be prohibited. However, neither the prior nor the current use of the property violates the zoning ordinance. Therefore, it seems to me that the only issue in this case is whether the change from one permitted use to another permitted use resulted in any substantial change in the nonconforming structure. It also seems to me that if we accept plaintiff's testimony that the sign is the same size and shape and uses the same method of suspension and illumination as when it said "Greylock Liquors," we must conclude that there has been no substantial change. Whatever inconsistency may have existed between the municipality's present sign restrictions and the "Greylock Liquors" sign remains the same *64 despite the change in the lettering to read "Greylock Chiropractic Clinic."[2]
The majority's theory would have significant implications in other situations involving a property owner's right to maintain a nonconforming structure upon a change in a permitted use. For example, there are frequently freestanding signs adjoining shopping malls which identify the businesses conducted therein. As I read the majority opinion, if a municipality were to adopt an ordinance prohibiting such signs or limiting their size, it could require existing signs enjoying the status of nonconforming structures to be removed whenever there was a change in one of the businesses conducted on the premises. Indeed, if a municipality amended its zoning ordinance to impose more stringent setback requirements upon commercial structures, the majority's theory could be applied to authorize a municipality to impose those requirements with respect to an existing building simply upon a change in the kind of business conducted therein. In my view, N.J.S.A. 40:55D-68 preserves a property owner's right to maintain a nonconforming structure under such circumstances.
Accordingly, I would reverse the judgment of the trial court and remand the matter to the Board of Adjustment to make specific findings as to whether plaintiff's sign is essentially the same sign previously used by the liquor store or is substantially altered in size, shape, illumination or in any other respect pertinent to the aesthetic considerations on which the municipality's sign restrictions are based. Cf. Belleville v. Parillo's *65 Inc., 83 N.J. 309, 314, 416 A.2d 388 (1980) ("the focus in cases such as this must be on the quality, character and intensity of the use, viewed in their totality and with regard to their overall effect on the neighborhood and the zoning plan.").
NOTES
[1] The property is located in a neighborhood retail district. The Board of Adjustment's attorney advised the Board that plaintiff needed only a bulk variance under N.J.S.A. 40:55D-70(c) for the sign, thus indicating that her use of the property for a chiropractic office was a permitted use.
[2] The majority implies that plaintiff could bring her sign into conformity with the new ordinance by simply rehanging it within 6 inches of the building facade. However, plaintiff testified that the present sign could not be rehung in conformity with the new ordinance, and that she would have to expend $2,500 to $3,000 to remove the sign and erect a new one. In any event, the right to maintain a nonconforming structure pursuant to N.J.S.A. 40:55D-68 is not dependent upon the amount of money which would have to be expended in order to remove or relocate the structure to conform with the new zoning ordinance.