277 N.J. Super. 130 (1994)
649 A.2d 98
JOSEPH VILLARI AND SJ VILLARI LIVESTOCK, PLAINTIFFS-RESPONDENTS,
v.
THE ZONING BOARD OF ADJUSTMENT OF DEPTFORD AND DEPTFORD TOWNSHIP, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1994.
Decided November 15, 1994.
*132 Before Judges SKILLMAN, WALLACE and KLEINER.
Wayne C. Streitz argued the cause for appellants (Ware, Streitz and Thompson, attorneys; Mr. Streitz, on the brief).
Bruce C. Hasbrouck argued the cause for respondents (Hasbrouck & Uliase, attorneys; Mr. Hasbrouck, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Plaintiffs are the owners of twenty acres of land in Deptford Township, Gloucester County, in an area presently zoned residential. Although some agricultural uses are permitted conditional uses in this zone, the "keeping of pigs" is only permitted on lots of fifty acres or more.[1] Thus, the raising of pigs is not a permitted use on plaintiffs' property.
Plaintiffs applied to the Deptford zoning officer for a permit to repair and reconstruct a fence for the purpose of holding pigs. Plaintiff Joseph Villari contended that members of his family had used the property for pig farming since 1929 or 1930, thereby creating a preexisting nonconforming use when the zoning was changed to prohibit this use,[2] and that he had not abandoned the use or the structures required for the use including the fence.
After the zoning officer denied plaintiffs' permit application, they filed an appeal with the Township of Deptford Board of *133 Adjustment (the Board). At the hearing, Villari testified that pig farming had been discontinued on the property for a period of from seven to ten years, during which time it had been used for growing corn and alfalfa, and that the fence formerly used to enclose the pigs had deteriorated. However, Villari asserted that plaintiffs had always intended to resume pig farming on the property. He also indicated that plaintiffs had in fact resumed pig farming approximately eighteen months to two years before the hearing. Villari said that there were approximately 400 pigs on the property at the present time and that this number would increase to approximately 750 if pig farming were held to be a valid nonconforming use and plaintiffs were granted a permit to reconstruct the fence. Villari further indicated that there had been as many as 1,000 pigs on the property in the past. A substantial number of residents of adjoining properties testified in opposition to plaintiffs' application, most of whom indicated that there had been no pig farming on the property for at least fifteen years.
Based on this record, the Board found that "there were no pigs or hogs[3] being raised on the premises for a period of at least seven years and probably much longer" and that "the deteriorated fence and enclosed area in question were not maintained in any manner relating to the raising of hogs or pigs during this period of time." The Board further found that "the applicant's failure to act in any way to maintain the area in question carried a significant implication that the applicant abandoned his interest in the raising of pigs and hogs in the area in question." Consequently, the Board concluded that plaintiffs had "abandoned the non-conforming *134 use and structure in question." Accordingly, the Board affirmed the zoning officer's denial of plaintiffs' permit application.
Plaintiffs filed this action in lieu of prerogative writs, contending that the Board's decision was not supported by substantial evidence in the record and was therefore arbitrary and capricious. Plaintiffs also contended that the zoning of his property and the Board's decision violated the "Right to Farm Act," N.J.S.A. 4:1C-1 to 10.
The trial court reversed the Board's decision, finding that plaintiffs "expressed no intention to abandon" pig farming on their property and "neither performed an act or failure to act which carries a sufficient implication" of an intent to abandon. The court also expressed the view that "where property has merely remained idle and there have [been] no significant changes made... which would be indicative of an intent to abandon the nonconforming use, such suspension of use does not extinguish the non-conforming use." Since the trial court concluded that plaintiffs had a preexisting nonconforming use, it did not address plaintiffs' alternative argument that the Right to Farm Act overrides municipal zoning which prohibits agricultural activities including the raising of livestock. The Board and Deptford Township appeal from the judgment reversing the Board's decision.
We are satisfied that there is sufficient credible evidence in the record to support the Board's finding that plaintiffs abandoned the use of the property for raising pigs. We also conclude that the Right to Farm Act does not override municipal zoning and land use regulation.[4] Accordingly, we reverse the judgment of the trial court and reinstate the Board's decision denying plaintiffs' permit application.

*135 I
The continuation of nonconforming uses and structures is authorized by N.J.S.A. 40:55D-68, which provides that "[a]ny nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied and any such structure may be restored or repaired in the event of a partial destruction thereof." However, a property owner has the burden of establishing the existence of a nonconforming use or structure, ibid.; Weber v. Pieretti, 72 N.J. Super. 184, 195, 178 A.2d 92 (Ch.Div.), aff'd o.b., 77 N.J. Super. 423, 186 A.2d 702 (App.Div. 1962), certif. denied, 39 N.J. 236, 188 A.2d 177 (1963), and the statutory authorization for continuing such uses is construed restrictively. See, e.g., Avalon Home & Land Owners Ass'n v. Borough of Avalon, 111 N.J. 205, 209-12, 543 A.2d 950 (1988); Town of Belleville v. Parrillo's, Inc., 83 N.J. 309, 315-18, 416 A.2d 388 (1980); Grundlehner v. Dangler, 29 N.J. 256, 263-64, 148 A.2d 806 (1959). "Because nonconforming uses are inconsistent with the objectives of uniform zoning, the courts have required that consistent with the property rights of those affected and with substantial justice, they should be reduced to conformity as quickly as is compatible with justice." Town of Belleville v. Parrillo's, supra, 83 N.J. at 315, 416 A.2d 388.
In accordance with this restrictive view, our courts have recognized that the right to continue a nonconforming use may be lost either through abandonment or discontinuance. Ibid.; Camara v. Board of Adjustment of Township of Belleville, 239 N.J. Super. 51, 56, 570 A.2d 1012 (App.Div. 1990). The traditional view is that "abandonment of a nonconforming use or structure requires `the concurrence of two factors: one, an intention to abandon; and two, some overt act, or some failure to act, which carries a sufficient implication that the owner neither claims nor retains any interest in the subject matter of the abandonment.'" Ibid. (quoting Borough of Saddle River v. Bobinski, 108 N.J. Super. 6, 16-17, 259 A.2d 727 (Ch.Div. 1969)). However, we have recently recognized that "a nonconforming use or structure may be terminated based *136 on cessation of use independent of any intent to abandon the nonconforming use or structure." Id. 239 N.J. Super. at 57, 570 A.2d 1012.
Professor Williams has cogently explained the reasons for rejecting the traditional requirement that a nonconforming use or structure may be terminated only by establishing the property owner's subjective intent to abandon that use or structure:
By definition, the question [of abandonment] comes up in court only when the owner is trying to resume nonconforming operations. In such a situation, his lawyer will tell him that, if he testifies that he never had any intention of abandoning the nonconforming use, he will win the lawsuit. In such a situation many plaintiffs can persuade themselves to give the correct testimony; ... This subjective test is thus a silly one, putting a premium on quasi-perjury....
....
The public policy on nonconforming uses clearly runs the other way; i.e., favors strong restrictions.
[4A Norman Williams, American Land Planning Law, §§ 115.02, 115.03 at 187, 189 (1986 rev.).]
Consequently, Professor Williams advocates rejection of the subjective test of an intent to abandon a nonconforming use and the adoption of an objective test, "that is, if nonconforming activities are not carried out in connection with a nonconforming use for a stated period of time, there is no legal right to resume." Williams, supra, § 115.14 at 205. The courts in a substantial number of jurisdictions have adopted this approach in determining whether a property owner's right to continue a nonconforming use has terminated. See, e.g., Hartley v. City of Colorado Springs, 764 P.2d 1216 (Colo. 1988); Essex Leasing, Inc. v. Zoning Bd. of Appeals of Town of Essex, 206 Conn. 595, 539 A.2d 101 (1988); Canada's Tavern, Inc. v. Town of Glen Echo, 260 Md. 206, 271 A.2d 664 (Md. 1970); see generally, Williams, supra, § 115.14.
We are satisfied that the Board's decision denying plaintiffs' permit application is sustainable under either the traditional subjective abandonment test or the objective discontinuance test advocated by Professor Williams and adopted by this court in Camara. Plaintiffs' suspension of the use of their property for raising pigs for a lengthy period of time together with their failure *137 to maintain the fence enclosure is persuasive evidence that they did not have a continuing, definite intention to resume this use. Cf. State v. Casper, 5 N.J. Super. 150, 153, 68 A.2d 545 (App.Div. 1949). Moreover, although Villari referred obliquely to "market conditions" as the reason for the prolonged discontinuance of pig farming, plaintiffs presented no supporting evidence that this commercial activity was unprofitable during the entire period in question. Therefore, the Board's finding that plaintiffs "abandoned [their] interest in the raising of pigs and hogs" on the property is adequately supported by the record.
In any event, even if plaintiffs did not have an actual subjective intention to abandon the raising of pigs, we would sustain the Board's decision based on plaintiffs' prolonged cessation of that use. "The purpose of [N.J.S.A. 40:55D-68] is to balance the municipality's interest in being able to amend its zoning ordinances with the property owner's interest in maintaining the use and value of his or her property." Palatine I v. Planning Bd. of Township of Montville, 133 N.J. 546, 565, 628 A.2d 321 (1993). When a property owner suspends a nonconforming commercial use for a substantial period of time without a compelling reason such as a depression or war, the municipality's interest in reducing nonconforming uses "to conformity as quickly as is compatible with justice," Town of Belleville v. Parrillo's Inc., supra, 83 N.J. at 315, 416 A.2d 388, outweighs the property owner's interest in resuming the discontinued use, especially when that use is highly discordant with permitted uses in the zoning district.

II
The Right to Farm Act (the Act), enacted in 1983 (L. 1983, c. 31), states that its "express intention" is "to establish as the policy of this State the protection of commercial farm operations from nuisance action[s], where recognized methods and techniques of agricultural production are applied, while, at the same time, acknowledging the need to provide a proper balance among the *138 varied and sometimes conflicting interests of all lawful activities." N.J.S.A. 4:1C-2(e). To that end, the Act establishes the State Agriculture Development Committee (the Committee), N.J.S.A. 4:1C-4(a), which is authorized to "[r]eview and evaluate the proposed rules, regulations and guidelines of any State agency in terms of feasibility, effect and conformance with the intentions and provisions of this act." N.J.S.A. 4:1C-6(b). The Act further provides:
The committee shall ... [u]pon a finding of conflict between the regulatory practices of any State instrumentality and the agricultural management practices recommended by the committee, commence a period of negotiation not to exceed 120 days with the State instrumentality in an effort to reach a resolution of the conflict, during which period the State instrumentality shall inform the committee of the reasons for accepting, conditionally accepting or rejecting the committee's recommendations and submit a schedule for implementing all or a portion of the committee's recommendations.
[N.J.S.A. 4:1C-6(d).]
In addition to these and other powers of the Committee, the Act provides that:
In all relevant actions ..., there shall exist a rebuttable presumption that no commercial agricultural operation, activity or structure which conforms to agricultural management practices recommended by the committee, and all relevant federal or State statutes or rules and regulations adopted pursuant thereto and which does not pose a direct threat to public health and safety, shall constitute a public or private nuisance, nor shall any such operation, activity or structure be deemed to otherwise invade or interfere with the use and enjoyment of any other land or property.
[N.J.S.A. 4:1C-10.]
See also N.J.S.A. 4:1C-9.
Thus, the Act authorizes the Committee to negotiate with state instrumentalities regarding rules, regulations and regulatory practices which the Committee considers to be in conflict with the policies of the Right to Farm Act and also circumscribes the availability of public and private nuisance actions to restrict commercial agricultural operations. However, nothing in the Act expresses a legislative intent to override a municipality's authority to zone all property located within its boundaries. In fact, the Act does not even refer to the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -112, which confers comprehensive zoning *139 power upon a municipality's governing body, N.J.S.A. 40:55D-62, and directs that this power be exercised "[t]o provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space." N.J.S.A. 40:55D-2g (emphasis added); see also N.J.S.A. 40:55D-28(b)(2)(b). Therefore, the Act may be found to override municipal zoning only if it impliedly repeals the part of the MLUL which confers comprehensive zoning power upon the municipal governing body.
"There is a strong presumption in the law against implied repealers." Township of Mahwah v. Bergen County Bd. of Taxation, 98 N.J. 268, 281, 486 A.2d 818, cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985). "[C]ourts are justifiably reluctant to find that one statute impliedly repeals the whole or part of another unless there is clear evidence that the Legislature so intended." State v. Reed, 34 N.J. 554, 560-61, 170 A.2d 419 (1961). "A repeal by implication requires clear and compelling evidence of the legislative intent, and such intent must be free from reasonable doubt." Township of Mahwah v. Bergen County Bd. of Taxation, supra, 98 N.J. at 280, 486 A.2d 818.
The Right to Farm Act does not contain such "clear and compelling evidence" of a legislative intent to displace municipal power over zoning insofar as it applies to commercial agricultural uses. The New Jersey Constitution expressly authorizes the Legislature to delegate the power to adopt zoning ordinances to municipalities. N.J.Const., Art. 4, § 6, par. 2. Although the Legislature also may delegate the zoning power to other governmental entities, Meadowlands Regional Dev. Agency v. State of N.J., 112 N.J. Super. 89, 122-24, 270 A.2d 418 (Ch.Div. 1970), aff'd, 63 N.J. 35, 304 A.2d 545, appeal dismissed, 414 U.S. 991, 94 S.Ct. 343, 38 L.Ed.2d 230 (1973); Toms River Affiliates v. Department of Envtl. Protection, 140 N.J. Super. 135, 146, 355 A.2d 679 (App. Div. 1976), any restriction of the municipal zoning power constitutes such a significant departure from the normal allocation of governmental power that the Legislature may reasonably be *140 expected to express this intent in clear and unequivocal language. For example, the Hackensack Meadowlands Reclamation and Development Act, N.J.S.A. 13:17-1 to -86, requires the Hackensack Meadowlands Development Commission to adopt "codes and standards covering land use [and] comprehensive zoning" and prohibits any municipality within the Hackensack Meadowlands Development District from enacting "any code which is inconsistent ... insofar as [it] applies to property within the district." N.J.S.A. 13:17-11(b). Similarly, the New Jersey Building Authority Act, N.J.S.A. 52:18A-78.1 to 78.32, authorizes the Building Authority to determine the "location, type and character" of buildings to be used primarily by State agencies "notwithstanding any land use plan [or] zoning regulation ... adopted by any municipality." N.J.S.A. 52:18A-78.5(u).
If the Legislature had intended commercial agricultural uses to enjoy a comparable exemption from municipal zoning, it undoubtedly would have expressed that intent with equal clarity, especially since such an exemption would have a potentially far-reaching impact upon municipal land use control. Any operator of a commercial farm, which is defined to mean "any place producing agricultural or horticultural products worth $2,500 or more annually," N.J.S.A. 4:1C-3(a), who also satisfies the eligibility criteria of the Farmland Assessment Act, N.J.S.A. 54:4-23.1 to 23.23, which requires at least five acres of land actively devoted to agricultural or horticultural use, N.J.S.A. 54:4-23.2, is entitled to the protection of the Right to Farm Act, N.J.S.A. 4:1C-9. Consequently, if the Act were construed to impliedly repeal the MLUL insofar as it confers plenary authority upon municipal government to regulate local land uses, including the designation of those areas in which particular agricultural activities are permitted, a substantial number of property owners could assert a right to use their properties in a manner inconsistent with municipal zoning, thereby imposing a burden upon the municipality to demonstrate that such use would "pose a direct threat to public health or safety." N.J.S.A. 4:1C-10. We further note that there is no inherent inconsistency between the Right to Farm Act and the MLUL, *141 because the Act may be reasonably construed to apply only when commercial farming is a permitted or valid nonconforming use. Therefore, we conclude that the Right to Farm Act does not override the land use powers which the MLUL confers upon municipal government.[5]
Accordingly, we reverse the judgment of the trial court and reinstate the Board's decision denying plaintiffs' permit application.
NOTES
[1] We were advised at oral argument that there are no lots this large in the zone.
[2] The zoning ordinance has prohibited pig farming on plaintiffs' property since at least 1967.
[3] The narrow dictionary definition of "pig" is "a young swine of either sex that has not yet reached sexual maturity." Webster's Third New International Dictionary, 1713 (1981). The dictionary defines "hog" as "a domestic swine, esp. an adult or growing animal weighing more than 120 pounds." Id. at 1076. This opinion uses the broad dictionary definition of "pig" as referring to any form of swine. Id. at 1713.
[4] Plaintiffs properly present this argument as an alternative ground for affirmance of the judgment from which the appeal has been taken, even though the trial court, having concluded that pig farming was a preexisting nonconforming use on the property, had no need to address the point. See Seton Co. v. City of Newark, 194 N.J. Super. 499, 508, 477 A.2d 397 (App.Div. 1984).
[5] We express no view regarding the obligation of a municipal land use agency to consider the policies of the Right to Farm Act in performing its statutory responsibilities such as reviewing variance applications.