NATHAN KOSLOW, SARAH KOSLOW, ELAINE K. CANTER AND RITA K. NADLER, TRADING AS NATS ASSOCIATES, PLAINTIFFS-APPELLANTS, v. MUNICIPAL COUNCIL OF THE TOWNSHIP OF WAYNE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued February 19, 1968—Decided July 31, 1968.

442

*Mr. Howard Stern* argued the cause for plaintiffs-appellants (*Messrs. Shavick, Thevos, Stern, Schotz and Steiger,* attorneys).

*Mr. Peter J. Van Norde* argued the cause for defendant-respondent.

The opinion of the court was delivered by

HALL, J. This is a soil removal case, with broad planning, zoning and subdivision regulation connotations. It has had a tortuous history. In the current aspect, the defendant municipal governing body denied plaintiffs a permit to remove a large quantity of soil under the ordinance dealing with that subject. The Law Division, in this action in lieu of prerogative writ brought to review the municipal determination, disagreed with the findings of the local body on the evidence and directed the permit to issue. The Appellate Division, on defendant's appeal, reversed in an unreported opinion, holding that the trial court had substituted its judgment on the proofs for that of the municipal agency contrary to established principles of the scope of judicial review and that there was a reasonable basis for the municipal action.

Plaintiffs appealed to this court without seeking certification, purportedly on the ground that the case involves a constitutional question. *R. R.* 1:2–1(*a*). Their brief did not demonstrate the existence of the required "substantial" issue of this kind, *Tidewater Oil Co. v. Mayor and Council of Borough of Carteret*, 44 *N. J.* 338 (1965), and the appeal was subject to dismissal, but no such application was made. The oral argument disclosed that there is a fundamental question of law in the case, which had been obscured in the earlier stages of the controversy, but is now brought into sharp focus by subsequent ordinance amendments, and which had not been fully presented in the briefs.

That question is the right of a municipality to provide that, in a residentially zoned district, substantial soil removal shall be prohibited except to the extent determined by the Planning Board, in connection with a specific subdivision application, as necessary to reasonably develop the land involved, in the light of its natural terrain and topography.

The parties agree that it is the necessary underlying issue and may be determined in its present abstract status without further plenary hearing at the trial level. Supplemental briefs have been filed at our direction and, in view of the public interest involved, we will decide the point. Our conclusion thereon is in favor of the right and leads to an affirmance of the Appellate Division on that additional basis. We should say also that we are satisfied that tribunal was eminently correct in its reversal of the trial court and affirmance of the municipal action under the thesis upon which it considered the appeal. See *Wulster v. Borough of Upper Saddle River*, 41 *N. J. Super.* 199 (*App. Div* 1956), certification denied 22 *N. J.* 268 (1956) ; *L. P. Marron & Co. v. Township of Mahwah*, 39 *N. J.* 74, 83–84 (1963).

The question arises in the following context. Plaintiffs have owned since May 1964 a 46 acre tract of undeveloped land in the north central part of Wayne Township, Passaic County. This municipality is large in area and has been experiencing a great amount of residential development and

population growth. The tract in question is hilly, to an elevation of over 400 feet, and heavily wooded for the most part. A brook courses downward through one part in a kind of natural ravine. The area to the east and north is of substantially the same character for a considerable distance. The lower flat land to the south and southwest (part of it had been levelled to some extent) is occupied by a new high school and a housing development.

The tract has long been zoned for single-family dwelling use only. It is conceded that commercial soil removal has never been a permitted use in the district. The minimum lot size requirement is 30,000 square feet. At least one reason for this rather large size is the nature of the terrain and resulting development problems. The minimum lot size requirement in the flat area to the south is very considerably smaller.

The Township enacted a soil removal ordinance in May 1963. The measure was a typical and entirely valid one. See *Fred v. Mayor and Council of Borough of Old Tappan,* 10 *N. J.* 515 (1952)*; Wulster v. Borough of Upper Saddle River, supra* (41 *N. J. Super.* 199); *L. P. Marron & Co. v. Township of Mahwah, supra* (39 *N. J.* 74).

The preamble recites a finding by the governing body that "the unregulated and uncontrolled relocation, filling, excavation and removal of soil on a large scale has resulted in conditions detrimental to the public safety, health and general welfare, substantially hampering and deterring the efforts of the Township of Wayne to effectuate the general purpose of Municipal Planning".

The first provision read at the time of adoption:

"No person shall excavate or otherwise remove soil for sale or for use on or off the premises from which the soil shall be taken, except in connection with the construction or alteration of a building on such premises and excavation or grading incidental thereto, where the volume of soil to be excavated is less than 1,000 yards, without first having procured permission therefor from the Municipal Council."

Beyond specifying the procedure to apply for a permit, general conditions, fees, performance bonds and the like, it

set forth the factors the governing body was required· to consider in passing upon an application: public health, safety and general welfare; soil erosion by water and wind; drainage; soil fertility; lateral support; slope and grades of abutting streets and lands; land values and uses; and "[s]uch other factors as may bear upon or relate to the co-ordinated, adjusted and harmonious physical development of the Township". It further specified the standards which had to be met before a permit could be granted: "* * * that the proposed soil removal will not create conditions detrimental to the public health, welfare and safety, and will not result in the creation of any sharp declivities, pits or depressions, soil erosion or fertility problems, depressed land values, nor create any drainage, sewerage problem [sic] or hazardous conditions * * *".

The Township has also had since at least 1954 a land subdivison ordinance, with a "strong" Planning Board, in the customary form requiring tentative and final board approval of all subdivisions and the installation by the developer of designated improvements, as well as specifying detailed design standards for the general plan, streets, lots and other aspects of a development. Included in these de-sign requirements is the provision that "[n]atural features such as trees, brooks, hilltops and views shall be preserved wherever possible in designing any subdivision containing such features". The ordinance also contains a provision, adequately authorized by the Planning Act, *N. J. S. A.* 40:55-1.20, that "[w]here there is a question as to the suitability of a lot or lots for their intended use due to factors such as rock formations, flood conditions or similar circumstances, the planning board may, after adequate in-vestigation withold approval of such lots".

Plaintiffs' predecessor in title, one Stuckler, had been granted a permit under the soil removal ordinance in Sep-tember 1963 to remove 1,400,000 cubic yards of soil from the tract, which we understand would have had the effect of levelling the hill to the grade of the flat area south of it. The

governing body shortly rescinded the permission by reason of public furor and the permit was never actually issued. Stuckler then commenced an action to set aside the rescission.

In March 1964 while the suit was pending the first section of the ordinance was amended by adding this language: "In the event the premises from which soil removal is proposed is located within a residential zone, application to the Municipal Council for a soil removal permit shall not be considered by the Municipal Council until after the applicant receives *final* subdivision approval of the premises in question from the Planning Board of the Township. . . ." (Emphasis added). The amendment was interposed in Stuckler's suit as a further defense. Shortly thereafter plaintiffs purchased the tract for $600,000, were assigned his rights under the permit application, and took over the action as parties plaintiff.

The Stuckler suit was decided in May 1965. The trial judge held that it was unnecessary to pass on the claim of invalidity of the action rescinding the grant of the permit, because the ordinance provided that a permit was not transferrable. Plaintiffs could therefore take no advantage from the prior municipal action and would have to make a new application, which they were authorized to do. He went on to hold that the March 1964 ordinance amendment, previously quoted, was invalid as an arbitrary and unreasonable exercise of the police power. While his expression was rather cryptic, we read it, as apparently the parties have, to mean that the unreasonableness was in limiting the right to apply for soil removal permission in connection with grading and preparing lands for development until *after final approval* of the subdivision by the Planning Board. We take it no arbitrariness would have been found if the subject had been related by the ordinance to *tentative* approval; otherwise we would have to say the conclusion was wrong. (The municipality neither took an appeal from the resulting judgment nor has it since corrected the ordinance by further amendment).

Thereafter plaintiffs made the new application to the Municipal Council—that referred to at the beginning of this opinion. Extensive hearings were held and voluminous testimony presented by plaintiffs and the municipality, as well as on behalf of individual objectors. Denial of the application led to the instant Law Division suit.[1]

Plaintiffs' proposal was to remove 800,000 cubic yards of soil from the tract, the effect of which would be to level it to a grade slightly higher than the flat land to the south. Practically all trees would be removed, the area generally denuded and the ravine filled. The magnitude of the operation is shown by the fact that the removal would require three years of 200 working days each, with 200 truck movements per day in and out of the premises over local roads—one every two and a half minutes. The soil was to be sold to contractors for fill for off-site highway and other construction and would return $200,000 to plaintiffs. As the governing body very properly found, the project was a large scale reshaping of the natural character of the premises.

There cannot be the slightest doubt that the proposal constituted commercial soil removal to a huge extent in a residential zone. The suggestion to the contrary is so absurd that it can hardly be considered as asserted in good faith. Plaintiffs' position before the governing body that it amounted to merely "grading and preparing" the land for residential development is utterly unrealistic. Plaintiffs are land investors, not builders and developers. They have never made any application to the Planning Board for subdivision approval and have none in prospect. Baldly put, what they sought to do was, through the stratagem of a soil removal per-

---

[1] While this present suit was commenced as a new action, it is in reality, as plaintiffs concede, a continuation of the original litigation and the alleged cause of action might well have been asserted by supplemental complaint therein, upon leave of court. *R. R.* 4:15-4. On this view, the earlier holding of the court that the March 1964 ordinance amendment was invalid is still open for appellate review.

mit, transform a small mountain into a bare plateau, thereby gaining an immediate recoupment on their investment and enabling cheaper and more profitable residential development of the tract by someone later on. The effect would be to considerably by-pass the Planning Board's power and obligation with respect to subdivision design and other appropriate considerations in the public interest and to confront it with a *fait accompli* sometime in the future.

 At this point we may detail our earlier conclusion that, on the thesis the matter was presented to and considered by the Municipal Council, that body could properly deny the permit. It could reasonably find on the proofs, as it did, that the proposed soil removal would create deleterious dust, erosion and traffic problems, would adversely affect land values in the area and "would not be in keeping with the planned development and the betterment and coordinated adjustment and harmonious physical development" thereof. The further finding that "[t]he premises * * * can be reasonably developed for its zoned use without the removal of soil as indicated in the application" was amply substantiated. In this connection, the testimony of the township engineer was that 45 lots of the required minimum size could be obtained with only incidental soil removal, as against 59 following plaintiffs' massive site reshaping. The difference represented the ravine sector.

After the Law Division's determination setting aside the denial of the permit, the municipality in 1966 enacted two amendments to its zoning ordinance, which were presented to the Appellate Division on its appeal as in themselves dispositive of the litigation. That tribunal found it unnecessary to pass upon their validity or application in view of its reversal of the trial court on the merits. Defendant's reassertion of their pertinence in this court led to the discussion at oral argument bringing into focus the fundamental question set forth early in this opinion.

The second amendment simply added to the first so that it now reads:

"SECTION 1.

\* \* \* \* \* \* \* \*

"Soil mining or soil removal operations shall be specifically prohibited within all residential districts, provided, however, this shall not prevent the removal of soil within residential districts if it is determined by the Planning Board, upon granting preliminary or final subdivision approval, that it is necessary to remove a small quantity of soil to provide the construction of one-family dwellings in conformity with the natural terrain and topography of the lands. In making such a determination, the Planning Board shall be guided by the standard that it is the determination of the governing body of the Township that the removal of soil within a residential district shall be limited to a minimal amount which may be necessary to reasonably develop the land in question without necessarily providing 100% utilization of all land for building plots.

"SECTION 2. All ordinances or parts of ordinances which are inconsistent with the provisions of this ordinance are hereby repealed to the extent of such inconsistency."

■■ Before dealing specifically with this amendment and the right to adopt it, we should review the legal incidents of the scene without it. A soil removal ordinance is in essence another tool of municipal planning, as the preamble to the Wayne ordinance points out. It cannot be construed and applied with blinders and without relation to other enactments in aid of the same general public purpose, especially zoning and subdivision regulation ordinances. Certainly a permit cannot validly be granted for what clearly amounts to commercial soil removal in a residential district where such an activity is not a permitted use under the zoning ordinance. Such is the case here and had the municipality raised the point at inception (the failure to have done so is not explained), that would necessarily have ended the application.

■■ In addition, where a soil removal application bears upon ultimate subdivision of the land involved, we believe it is inherent in the scheme of things that the initial decision of the matter rest with the Planning Board under its broad and salutary powers to regulate land development in the interest of the paramount general welfare of the entire community. See *Levin v. Township of Livingston*, 35 N. J.

500 (1961); *Hilton Acres v. Klein,* 35 *N. J.* 570 (1961). Such a soil removal application should not be considered by the agency authorized to pass thereon unless and until the Planning Board has decided in connection with tentative subdivision approval that the reasonable development of the particular tract requires substantial soil removal and has determined the necessary extent thereof. It will then be for the municipal governing body to decide upon the other aspects of the operation committed to it, especially the physical and mechanical methods of carrying it out. In effect, this is what the March 1964 amendment to this soil removal ordinance was designed to spell out (as we have said, the enactment was unreasonable only because it delayed a soil removal application until after *final* approval by the Planning Board). But we are convinced the same order of proceedings is called for even without any such ordinance specification.

We fail to see any validity in plaintiffs' thesis of some inherent and practically unbridled right in a landowner to "prepare" his land by violently transforming the landscape, thereby thwarting the basics of appropriate land development regulation. The day of sacrificing the public interest in sound municipal planning by such devices to enable a greater profit to land speculators and developers has long since passed.

In the light of these fundamentals of municipal planning law and regulation, we have no doubt of the local power to enact a provision like the 1966 zoning ordinance amendment. Essentially it simply implements in more detailed fashion what we have found to be otherwise implicit, both procedurally and substantively. Its provisions might perhaps be more artfully expressed and also included in substance in the soil removal and subdivision regulation ordinances, but, as we have indicated, all enactments in this field are necessarily related and must be read together to obtain the full meaning and import of each.

Furthermore, we have no hesitancy in holding this particular enactment to be valid on its face, construing it,

as we think it must be, to mean that any soil removal determination in connection with subdivision approval is to be made initially by the Planning Board at the time of tentative approval action. The standard to govern allowance or disallowance of substantial soil removal in residential districts is adequately and properly set forth as the *reasonable* development of the land in question. We see no objection to keying reasonableness to the minimum soil removal necessary, taking into full account the natural terrain and topography. The maximum preservation of such characteristics often involves most valuable benefits, from the overall public standpoint, in an exploding metropolitan area in this day and age. Not to require appropriate regard therefor will frequently result in doing violence to the long established principle that zoning and planning regulations are not required to be geared to the most profitable utilization of an owner's property.

We also do not believe that the enactment is defective because it states a policy that subdivision approval need not necessarily provide "for 100% utilization of all land [in the particular tract] for building plots". In the light of *N. J. S. A.* 40:55–1.20 directing that the planning agency shall require that all lots "shall be adaptable for the intended purposes" and the construction thereof that approval may be withheld as to lots that are not so adaptable and cannot be made so (see generally *Ardolino v. Borough of Florham Park Board of Adjustment,* 24 *N. J.* 94, 108–110 (1957) ; *Levin v. Township of Livingston, supra* (35 *N. J.,* at *p.* 510) ; *Hilton Acres v. Klein, supra* (35 *N. J.,* at *p.* 586), we cannot say as an abstract matter that there is necessarily a taking for public use where every foot of a large subdivision may not, for natural or other reasons, be usable for building and appurtenant purposes. *Cf. Spiegle v. Borough of Beach Haven,* 46 *N. J.* 479 (1966), *certiorari* denied 385 *U. S.* 831, 87 *S. Ct.* 63, 17 *L. Ed. 2d* 64 (1966) ; *Morris County Land Improvement Co. v. Parsippany-Troy Hills Township,* 40 *N. J.*

539 (1963). Clearly the inclusion of this policy standard does not make the enactment bad on its face.

In fact, plaintiffs' attack really relates to questions of application and degree, which are not properly before us in the present posture of this case. It is premature to assert or consider them until a specific application is made for tentative approval of a subdivision of the property and the matter of reasonable development of the tract, in the light of all statutory and ordinance policies, standards and requirements, can be fully explored and determined.

Other contentions of plaintiffs do not warrant discussion beyond brief comment on the claim that defendant is barred on some theory of *res adjudicata* from asserting the validity or applicability of the 1966 zoning ordinance amendments. This appears to be based on the adoption of the 1964 soil removal ordinance amendment and the subsequent judicial declaration with respect thereto, which we have previously discussed and explained. The point is frivolous. Ordinarily there can be no *res adjudicata* bar to the exercise of legislative power; certainly no such theory can come into play under the circumstances here. The thoroughly settled rule applies that the state of legislation at the time of decision is controlling. *Morris v. Postma,* 41 *N. J.* 354 (1964).

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL and SCHETTINO—5.

*For reversal*—None.