753 A.2d 162 (2000)
332 N.J. Super. 223
Alan WILLOUGHBY, William H. Reese, Sr. and Citizens Alliance for a Responsible Environment, Plaintiffs-Respondents,
v.
The WOLFSON GROUP, INC., Defendant-Appellant, and
Planning Board of the Township of Deptford and the Township Council of Deptford Township, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 2000
Decided June 23, 2000
*163 Patricia L. Talcott, Blue Bell, PA, for defendant-appellant (Pepper Hamilton; Dilworth Paxson; and Sherman, Silverstein, Kohl, Rose & Podolsky, attorneys; John Matheussen, Cherry Hill, and Robert Washburn, Pennsauken, of counsel; Ms. Talcott, on the briefs).
James P. Pierson, Woodbury, for defendant-respondent Township of Deptford (Angelini, Viniar & Freedman, attorneys; Mr. Pierson, on the brief).
Respondent Alan Willoughby, pro se for plaintiffs-respondents Alan Willoughby, William H. Reese, Sr. and Citizens Alliance for a Responsible Environment.
Before Judges SKILLMAN, D'ANNUNZIO and NEWMAN.
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
We addressed some of the issues in this case in two earlier reported opinions: Willoughby v. Planning Bd. of Tp. of Deptford, 306 N.J.Super. 266, 703 A.2d 668 (App.Div.1997) (Willoughby I); and Willoughby v. Planning Bd. of Tp. of Deptford, 326 N.J.Super. 158, 740 A.2d 1097 (App.Div.1999) (Willoughby II). In Willoughby II, we held that an amendment to the Township's zoning ordinance was substantially inconsistent with the Township's master plan and, therefore, the governing body had to comply with N.J.S.A. 40:55D-62a (section 62a). We reproduce a summary of the facts from Willoughby II:
The Wolfson Group (Wolfson) plans to develop a thirty acre tract of land on the east side of Hurffville Road, also designated as Route 41. Wolfson's development would include a Wal-Mart store and other retailers. Prior to September 1995, the Wolfson tract was zoned Office Campus (OC). Retailing is not a permitted use in the OC zone. Wolfson requested a zoning change from OC to Town Center (TC) to permit its planned development.
On July 26, 1995, the Township's Planning Board (Board) voted unanimously to recommend to the governing body that the Wolfson tract be rezoned. On August 23, 1995, the Board adopted a resolution memorializing its recommendation. On August 10, 1995, the governing body passed on first reading an ordinance rezoning the Wolfson tract from OC to TC. The ordinance was adopted on September 7, 1995. Both the Board and the governing body explained in detail their reasons for the rezoning, the Board in its memorializing resolution and the governing body in its ordinance. Both found the rezoning to be consistent with the master plan.

[326 N.J.Super. at 160-61, 740 A.2d 1097.]
The relevant part of section 62a provides:
The governing body may adopt or amend a zoning ordinance relating to the nature and extent of the uses of land and of buildings and structures thereon. Such ordinance shall be adopted after the planning board has adopted the land use plan element and the housing plan element of a master plan, and all of the provisions of such zoning ordinance or any amendment or revision thereto shall either be substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements; *164 provided that the governing body may adopt a zoning ordinance or amendment or revision thereto which in whole or part is inconsistent with or not designed to effectuate the land use plan element and the housing plan element, but only by affirmative vote of a majority of the full authorized membership of the governing body, with the reasons of the governing body for so acting set forth in a resolution and recorded in its minutes when adopting such a zoning ordinance.

[Section 62a.]
Thus, section 62a permits a governing body to adopt an amendment to a zoning ordinance inconsistent with the master plan if a "majority of the full authorized membership of the governing body" votes for it. Here, the amendment changing the zone from OC to TC was adopted by the required majority vote. Additionally, section 62a requires that the governing body's reasons "for so acting" must be expressed "in a resolution and recorded in its minutes." In the present case, the governing body determined that the proposed amendment was consistent with the master plan. Nevertheless, it explained in detail its reasons for changing the zoning of the tract in question from OC to TC in the "Whereas" clauses contained in the ordinance.
Although we ruled in Willoughby II that the amendment was inconsistent with the master plan, we raised an issue sua sponte and remanded to the trial court to address it. We stated:
The remaining issue, which this court raises sua sponte, is whether the [Planning] Board's resolution and the "Whereas" clauses in the ordinance effect compliance with [section 62a], despite the absence of a finding of inconsistency. We are reluctant to address and decide this issue because the parties have not raised it and the trial court did not address it. Therefore, we remand to the trial court to address this issue, after affording counsel an opportunity to brief it and otherwise to be heard.

[326 N.J.Super. at 166, 740 A.2d 1097.]
On remand, Judge DeSimone held that section 62a requires an initial finding of inconsistency by the governing body when it adopts a zoning amendment which is in fact determined to be inconsistent with the master plan. Judge DeSimone reasoned:
While the reasons set forth in the ... `Whereas' clauses in the Township's Ordinance may justify rezoning from OC to TC, those reasons were drafted with the mistaken belief that the re-zoning was `substantially consistent' with the Master Plan and therefore cannot be used to now justify inconsistency with the Master Plan.
Judgment was entered in favor of plaintiffs, and the Wolfson Group appeals. We now affirm.
We begin with section 62a. As previously indicated, its relevant language authorizes a governing body to "adopt a zoning ordinance or amendment ... which... is inconsistent with ... [the master plan] but only by affirmative vote of a majority of the full authorized membership of the governing body, with the reasons of the governing body for so acting set forth in a resolution ...." (emphasis added). The phrase "for so acting" refers to the adoption of an ordinance or amendment inconsistent with the master plan. The statute's language, therefore, requires the governing body to recognize that it is adopting an amendment inconsistent with the plan when it expresses the reasons for its actions.
In East Mill Assocs. v. Township Council of Tp. of East Brunswick, 241 N.J.Super. 403, 575 A.2d 61 (App.Div.1990), we held that a "reasons" resolution adopted thirty-six days after enactment of an admittedly inconsistent zoning amendment did not satisfy section 62a. We ruled that section 62a requires the reasons resolution to be adopted contemporaneously with the inconsistent amendment. Id. at 407, 575 A.2d 61. We observed:
By requiring contemporaneous passage, the law not only provides an avenue for *165 public scrutiny of the action (including a record for judicial review) but, perhaps more importantly, ensures that the inconsistency is clearly recognized and rationalized when the action is taken. There is a significant difference between contemporaneous debate and post hoc rationalization.

[Ibid. (emphasis added).]
The Municipal Land Use Law (MLUL) elevates the significance of the master plan and gives it a central role in municipal land use decisions. N.J.S.A. 40:55D-28 authorizes the planning board to prepare, adopt and amend a master plan. It defines the mandatory and optional elements of a master plan. N.J.S.A. 40:55D-89 requires municipal planning boards to reexamine the master plan and development regulations at least every six years. The planning board is required to "prepare and adopt by resolution a report on the findings of such reexamination, a copy of which report and resolution shall be sent to the county planning board and the municipal clerk of each adjoining municipality." Ibid. N.J.S.A. 40:55D-89.1 provides that the planning board's failure to adopt a reexamination report "shall constitute a rebuttable presumption that the municipal development regulations are no longer reasonable."
Other sections of the MLUL rely on the master plan. N.J.S.A. 40:55D-29 authorizes long term municipal capital improvement programs which "shall take into account public facility needs indicated by the prospective development shown in the master plan...." Under N.J.S.A. 40:55D-31 a governing body must refer capital projects to the planning board "for review and recommendation in conjunction with such master plan." N.J.S.A. 40:55D-32 (section 32) authorizes a municipal governing body to adopt an "official map of the municipality, which shall reflect the appropriate provisions of any municipal master plan." The map may be inconsistent with the master plan but only if it is adopted by a majority of the governing bodies full authorized membership "with the reasons for so acting recorded in the minutes when adopting the official map." Ibid. Thus, section 32 replicates section 62a.
Section 62a authorizes municipalities to adopt zoning ordinances, but planning board adoption of a master plan is a prerequisite to the exercise of the zoning power. Section 62a; Manalapan Realty v. Township Comm. of Manalapan Tp., 140 N.J. 366, 381, 658 A.2d 1230 (1995). Moreover, a use variance may not be granted unless it "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70d. The phrase "zone plan" as used in this statute means master plan. See Medici v. BPR Co., 107 N.J. 1, 4, 21, 526 A.2d 109 (1987).
It is apparent that the MLUL gives the master plan a central role in a municipality's decisions regarding the use and development of the land within its jurisdiction. Section 62a anchors the master plan's role by generally requiring not only that amendments to a zoning ordinance be "substantially consistent" with the master plan, but that "all of the provisions of such zoning ordinance" be "substantially consistent" with the master plan.
We conclude that before adopting a zoning amendment inconsistent with the master plan, the governing body must expressly recognize the inconsistency. This will give effect to the significance the Legislature attached to the master plan. Recognition of inconsistency triggers the requirement of a full majority vote. That fact may alter the political landscape regarding a proposed amendment. Recognition of inconsistency flags the significance of the proposal and its potential impact on land use. Moreover, and perhaps most important, the rule we announce today compels the governing body to treat the master plan with the respect and importance assigned to it by the Legislature.
We make one additional observation. N.J.S.A. 40:55D-26 requires reference to the planning board of any proposed zoning amendment. The planning board "shall make and transmit to the governing body *166 ... a report including identification of any provisions in the proposed ... amendment which are inconsistent with the master plan and recommendations concerning these inconsistencies...." Ibid. As previously indicated, the planning board also found the amendment to be consistent with the master plan.
Although not necessary to our decision, we are persuaded that the planning board's failure to find inconsistency would not have been fatal to the ordinance if the governing body had expressly recognized the inconsistency. The power to adopt an ordinance is in the governing body. To rule otherwise would permit a planning board, by declining to find inconsistency, to impose a de facto veto over any proposed zoning ordinance that was inconsistent with the master plan.
Affirmed.