Reversed and remanded for further proceedings consistent with this opinion.

920 A.2d 700

MARK A. NOUHAN, CHARLES AND PHYLLIS NOUHAN, ROGER AND JUNE FRANCIS, GINA HATHAWAY, PAUL AND MONIKA KOMOSINSKI, JOHN AND DONNA RAINERI, AND ELLEN STEPHENS, INDIVIDUALS, PLAINTIFFS–APPELLANTS, v. BOARD OF ADJUSTMENT OF THE CITY OF CLIFTON, DEFENDANT–RESPONDENT, AND RICHARD HANKE AND RICHARD'S BEEF & BREW, INC. DEFENDANTS/INTERVENORS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted March 13, 2007—Decided April 19, 2007.

284

Before Judges SKILLMAN, HOLSTON, JR. and GRALL.

*Cavaliere & Cavaliere,* attorneys for appellants (*Matthew J. Cavaliere,* of counsel and on the brief).

*John D. Pogorelec,* attorney for respondent Board of Adjustment.

*Peterson & Peterson,* attorneys for intervenors-respondents *Richard Hanke and Richard's Beef & Brew, Inc.* (*Glenn F. Peterson,* on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

Intervenor Richard's Beef and Brew, Inc., d/b/a Pub 46 (Pub 46), operates a restaurant and entertainment facility on a small parcel of land on Route 46 in Clifton. Pub 46's authorization for operation of the restaurant is provided by a special exception granted by the Clifton Board of Adjustment in 1974.[1] This special

---

[1] A use authorized by a special exception under the former Municipal Planning Act, *N.J.S.A.* 40:55–39b (repealed 1975), was similar to a conditional use under

exception allows Pub 46 to operate a restaurant with seating for eighty-eight persons.

The ordinance in effect when the special exception was granted required thirty-four parking spaces for a restaurant with this capacity. The special exception provided that this requirement would be satisfied by Pub 46 maintaining a total of forty-one parking spaces, of which twenty-two would be on its own property and nineteen on an adjoining Amoco gasoline station property. The special exception further provided that when the lease with Amoco for the nineteen parking spaces terminated, the special exception allowing operation of a restaurant with seating for eighty-eight persons also would terminate.[2]

Around 2000, Pub 46 began operating not only a restaurant but also a discotheque-nightclub business on the premises. This business is conducted at night after normal restaurant operating hours. Pub 46 operates this business under the purported authority of an entertainment license issued by the Clifton governing body.

The discotheque-nightclub business involves the playing of music by a band or disc jockey, dancing and the playing of pool. This business attracts substantially more patrons than Pub 46's authorized restaurant seating capacity, and as a result, the forty-one parking spaces required under the 1974 resolution authorizing the restaurant are insufficient during the discotheque-nightclub's hours of operation.

Plaintiffs, who reside near Pub 46, complained to the Clifton zoning officer that the use of the premises for a discotheque-

---

the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–3; *N.J.S.A.* 40:55D–67, which is a use that is permitted in a zoning district only if specific conditions and standards are satisfied. See *Coventry Square, Inc. v. Westwood Zoning Bd. of Adjustment*, 138 *N.J.* 285, 292–94, 650 *A.*2d 340 (1994).

[2] Before 1974, the premises had been operated first as a delicatessen and later as a restaurant with a lesser authorized seating capacity than under the 1974 special exception.

nightclub was not authorized by the zoning ordinance or the 1974 special exception permitting the premises' use as a restaurant and asked him to undertake enforcement action to prevent this nonconforming use. Despite repeated requests by plaintiffs, the zoning officer failed to take any action. Consequently, plaintiffs filed an application with the Zoning Board for interpretation and enforcement of the zoning ordinance and the special exception.

At the hearing before the Board on the application, plaintiff Mark Nouhan, who owns and resides in a home directly behind Pub 46, testified that the operation of Pub 46 has "morphed" from a "restaurant" into a "nightclub." He stated that patrons are entertained by bands or disc jockeys playing music, the parking lot is noisy late at night, and beer bottles and condom wrappers are thrown over a fence surrounding the property. At the suggestion of plaintiffs' counsel, Nouhan went to Pub 46 on a weekend, at approximately 11:30 p.m., and made the following observations:

You walk into the door, there's a number of tables. There's a bar. And you walk to the left, the band area, and some of the dancing area, another bar in back, a pool table, some more seating areas.

What I saw was a bunch of people in there, drinking, some sitting, some standing, some dancing, some singing along with the music, some playing pool. . . .

Nouhan also testified that a band was playing music and 95% of the patrons were just drinking and not eating food when he visited the premises.

The Zoning Officer, Daniel Howell, stated that he has never gone to Pub 46 at night and therefore was not in a position to testify about the nature of the business Pub 46 conducts after 9 p.m. Pub 46 did not present any witnesses to dispute Nouhan's description of its use of the premises.

On May 4, 2005, the Zoning Board approved a resolution that rejected plaintiffs' application and affirmed the Zoning Officer's decision "concerning the current use of the premises as a restaurant with an entertainment license[.]" The Board made the following findings:

a. The site in question is a restaurant with an entertainment license issued by the Mayor and Municipal Council;

b. The major complaints by the applicant do not deal with the restaurant use, but are concern[ed] with the entertainment license;

c. The entertainment license is not within the jurisdiction of the Zoning Ordinance;

d. The applicants recourse is to challenge the issuance of the entertainment license before the Mayor and Municipal Council which has jurisdiction of the matter;

e. The Board accepts the testimony of Zoning Officer Daniel Howell that there are no violations of the zone ordinance;

f. The facility is not a nightclub, but a restaurant with an entertainment license;

h. The applicant has failed to sustain the burden of proof to show that the zoning officer is not enforcing the applicable provisions of the zone ordinance concerning the subject facility;

i. The complaints made by the applicant concerning the use of the premises are not within the jurisdiction of the Board[.]

Plaintiffs filed this action in lieu of prerogative writs challenging the Zoning Board's decision. The trial court rejected this challenge and upheld the resolution of the Zoning Board. The court's oral opinion states in pertinent part:

Plaintiffs ... do not complain about the restaurant use, which is entirely appropriate and permitted in the BD zone as a conditional use. It complains that as of 9:00 or 10:00 on certain weekdays and certainly on Friday and Saturday nights, the restaurant morphs into a nightclub.

Now another chapter of the Clifton code comes into play here. At least since 2000, Richard's Beef and Brew, trading as ... Pub 46, has held an entertainment license, which was ... granted by the Mayor and Council.

. . . .

[T]he Mayor and Council have the statutory authority, under *N.J.S.A.* 40:52–1, to issue such licenses, and I particularly refer to subparagraph ... F ... of that statute which refers to dance halls,—parlors, cinemas, show houses, opera houses, bowling alleys, other places of public entertainment, etcetera.

. . . .

Now the entertainment license ... indicates the nights of standard entertainment, the hours and what can be done. In effect it indicates that acoustical non-amplified entertainment four nights a week are permitted. . . .

. . . .

So number one, you['re] dealing with a restaurant, which is a conditional use. . . . And two, you've got an entertainment license, which was granted by the Mayor and Council, subject to certain conditions.

. . . .

I find that because ... there are other ordinances in the Clifton code that deal with land use, they must be read in para materia with the zoning code.

The fact the entertainment license is not part of the zoning code ... is not lethal to Defendant's position.

. . . .

I don't see this as a matter of zoning, I see it [as] a matter of dealing with the Mayor and Council, by way of attacking the entertainment license, because clearly the Applicant's are not upset about the operation of the restaurant, they are upset about what is being done on this site as a result of the owner having obtained the entertainment license.

We conclude the trial court erred in holding that a mercantile license, such as the entertainment license issued to Pub 46, can authorize a use of property that is not permitted by the zoning ordinance. We also conclude Pub 46's current use of its property as a discotheque-nightclub is not a permitted use under the zoning ordinance or the special exception under which Pub 46 is permitted to operate a restaurant. Accordingly, we reverse.

I

Any ordinance regulating the use of land must be adopted in accordance with the MLUL, *N.J.S.A.* 40:55D–1 to –99. *See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 379, 658 *A.*2d 1230 (1995); *see generally* William M. Cox & Donald M. Ross, *New Jersey Zoning & Land Use Administration* § 34–2.1 to –2.4 (2007). A governing body may adopt a zoning ordinance regulating land use only after the planning board has adopted the land use and housing plan elements of the master plan. *N.J.S.A.* 40:55D–62(a). The governing body must refer any proposed zoning ordinance to the planning board to determine whether it is consistent with the master plan. *N.J.S.A.* 40:55D–26; *N.J.S.A.* 40:55D–64. In addition, except where an amendment to a zoning ordinance has been recommended in the planning board's periodic reexamination of the master plan, notice of the proposed amendment must be given to affected property owners. *N.J.S.A.* 40:55D–62.1; *see* Cox & Ross, *supra,* § 34–2.3(a). If a zoning ordinance is not "substantially consistent" with the land use and housing plan elements, the governing body must adopt it "by affirmative vote of a majority of the full authorized membership of the governing body" and provide "reasons" for adopting an ordi-

nance that is not substantially consistent with those elements. *N.J.S.A.* 40:55D–62(a). Any ordinance regulating land use that is not adopted in accordance with these requirements is invalid. *See Riggs v. Twp. of Long Beach,* 109 *N.J.* 601, 611–12, 538 *A.*2d 808 (1988); *Willoughby v. Wolfson Group, Inc.,* 332 *N.J.Super.* 223, 227–29, 753 *A.*2d 162 (App.Div.), *certif. denied,* 165 *N.J.* 603, 762 *A.*2d 218 (2000).

■ The MLUL confers authority upon the board of adjustment to "[h]ear and decide appeals where it is alleged by the appellant that there is error in any order, requirement, decision or refusal made by an administrative officer based on or made in the enforcement of the zoning ordinance[.]" *N.J.S.A.* 40:55D–70(a). The board of adjustment is also authorized to interpret the zoning ordinance. *N.J.S.A.* 40:55D–70(b). These powers of a board of adjustment are exclusive. *N.J.S.A.* 40:55D–20. Therefore, the board of adjustment must hear and decide any claim that a zoning officer has misinterpreted or failed to enforce the municipal zoning ordinance.

■ In addition to the authority to regulate land uses in conformity with the MLUL, the Legislature also has delegated authority to municipalities to license and regulate certain businesses conducted within their boundaries. *N.J.S.A.* 40:52–1; *see Bernardsville Quarry, Inc. v. Borough of Bernardsville,* 129 *N.J.* 221, 228–30, 608 *A.*2d 1377 (1992). The businesses enumerated in *N.J.S.A.* 40:52–1 that may be subject to such licensing and regulation are ones that must "be regulated to avoid injury to the public." *Salomon v. City of Jersey City,* 12 *N.J.* 379, 391, 97 *A.*2d 405 (1953). Such businesses include places of public entertainment. *N.J.S.A.* 40:52–1 provides in pertinent part:

> The governing body may make, amend, repeal and enforce ordinances to license and regulate:
>
> . . . .
>
> (f) Theatres, cinema and show houses, opera houses, concert halls, dance halls, pool or billiard parlors, bowling alleys, exhibition grounds, and all other places of public amusement, circuses and traveling or other shows, plays, dances, exhibitions, concerts, theatrical performances, and all street parades in connection therewith[.]

Thus, a municipality unquestionably has the authority to license and regulate a discotheque or nightclub.

However, the issuance of a license to a regulated business does not authorize a use of land that is not permitted under the zoning ordinance. The regulation of land uses under the MLUL and the licensing and regulation of businesses under *N.J.S.A.* 40:52–1 constitute two separate spheres of municipal regulation. A particular use of land may be permitted only by the governing body's adoption of a zoning ordinance in accordance with the MLUL or by a board of adjustment's grant of a use variance in accordance with *N.J.S.A.* 40:55D–70(d). If a business enumerated in *N.J.S.A.* 40:52–1 is a permitted use in a zoning district, the municipality also may subject that business to licensing and regulation. But the grant of a license cannot authorize a use that is not permitted either by the zoning ordinance or a use variance. Therefore, a governing body should not issue a license for a business activity that is not permitted under the MLUL. *See Koslow v. Mun. Council of Twp. of Wayne,* 52 *N.J.* 441, 450, 245 *A.*2d 729 (1968); *Cronin v. Twp. Comm. of Chesterfield Twp.,* 239 *N.J.Super.* 611, 618–19, 571 *A.*2d 1354 (App.Div.1990).

For these reasons, the zoning officer, Board of Adjustment and trial court erred in concluding that the entertainment license the Clifton governing body issued to Pub 46 provided authorization, independent of the zoning ordinance, for Pub 46 to use its premises for the operation of a discotheque-nightclub. The premises may be put to this use only if it is permitted under the zoning ordinance or the special exception for operation of a restaurant the Board of Adjustment granted in 1974.

## II

The Clifton zoning ordinance specifically prohibits dance halls and discotheques in every zoning district:

> *Uses specifically prohibited in all districts.* The following uses and structures are deemed inappropriate to the highly urbanized City of Clifton, inimical to the

public health, safety, welfare and morals and may not be established in any zoning district created by this chapter.

. . . .

 (5) Dance halls and discotheques.

[Clifton Zoning Ordinance § 461–13.1(B)(5).]

In addition, another section of the Clifton zoning ordinance provides that any use that is not specifically permitted is prohibited. Clifton Zoning Ordinance § 461–4. Thus, if the entertainment use conducted in Pub 46 is considered a discotheque, it is expressly prohibited, and if it is considered a nightclub, it is prohibited because it is not expressly permitted. Therefore, it is clear that Pub 46's discotheque-nightclub business is not permitted under the current Clifton zoning ordinance.

 Furthermore, this use is not permitted under the special exception granted to Pub 46 in 1974 to operate a restaurant. That special exception only authorized use of the premises for a restaurant with seating for eighty-eight persons, conditioned upon Pub 46 maintaining arrangements with the adjoining Amoco gasoline station for parking of nineteen cars. It did not authorize the conduct of a nightclub, discotheque or other similar business operation.

Pub 46's argument that the special exception's authorization for operation of a restaurant also provides authorization for operation of a discotheque-nightclub is similar to the argument the Supreme Court rejected in *Town of Belleville v. Parrillo's, Inc.,* 83 *N.J.* 309, 416 *A.*2d 388 (1980). In that case, a restaurant on the subject property was a pre-existing non-conforming use. *Id.* at 312, 416 *A.*2d 388. The property owner renovated the restaurant and began operating a discotheque, which resulted in the municipality where the business was located filing charges in municipal court for a violation of the zoning ordinance. *Ibid.* The property owner defended on the ground that the authorized use of the property for a restaurant extended to its use as a discotheque because its business operation still involved service of food to patrons. *Id.* at 313, 416 *A.*2d 388. In rejecting this argument, the Court stated:

> [D]efendant's conversion of the premises from a restaurant to a discotheque resulted in a substantial, and therefore impermissible, change. The entire character of the business has been altered. What was once a restaurant is now a dancehall. Measured by the zoning ordinance the general welfare of the neighborhood has been demonstrably affected adversely by the conversion of defendant's business.
>
> [*Id.* at 318, 416 *A.*2d 388.]

*See also Heagen v. Borough of Allendale,* 42 *N.J.Super.* 472, 480–83, 127 *A.*2d 181 (App.Div.1956).

Similarly, Pub 46's conversion of its business from solely a restaurant to use as a discotheque-nightclub constitutes a substantial change in use that is not authorized by the 1974 special exception. The entertainment license issued by the Clifton governing body authorizes Pub 46 to provide "[a]coustical/non-amplified entertainment" four nights per week from 9:00 p.m. to 1:00 a.m. and "[e]lectrical/amplified entertainment" four nights per week from 9:00 p.m. to 12:30 a.m. The license also states that the authorized entertainment may consist of either a one to four piece band or "DJ Music." The evidence presented before the Board established that Pub 46 is providing nighttime entertainment, consisting of both live bands and disc jockey music, in accordance with this license. The evidence also established that the business operation Pub 46 is conducting after 9:00 p.m. is a discotheque-nightclub use rather than a restaurant use. Consequently, Pub 46's nighttime use of its premises is not authorized by either the current zoning ordinance or the special exception granted to Pub 46 in 1974.

Accordingly, the order affirming the Board of Adjustment's rejection of plaintiffs' challenge to the Zoning Officer's refusal to prevent this use and dismissing plaintiffs' complaint is reversed. The case is remanded to the Board of Adjustment and Zoning Officer to enforce the zoning ordinance.